# Richmond

## BENDER-MILLER COMPANY, INC. v. THOMWOOD FARMS, INC., ET AL.

March 8, 1971.

Record No. 7362.

Present, All the Justices.

*Herbert L. Karp* (*Samuel B. Brown; Frank J. Meyer*, on brief), for plaintiff in error.

*David Hugh Boyd*, for defendants in error.

SNEAD, C. J., delivered the opinion of the court.

On January 23, 1967 Thomwood Farms, Inc., Samuel F. Thomas and Elizabeth F. Thomas (Thomwood Farms) [1] instituted an action

---

[1] Samuel F. Thomas and Elizabeth F. Thomas are husband and wife. They owned 100% of the stock of Thomwood Farms, Inc. at all times before the corporation was dissolved in January 1965. Upon dissolution they acquired all right, title and interest in and to the corporation's assets.

against Bender-Miller, Inc. (Bender-Miller) for breach of contract. The trial court entered judgment on a jury verdict of $7,895 rendered in favor of Thomwood Farms. We granted Bender-Miller a writ of error to that judgment.

The question involved in this appeal is whether the trial court erred in granting certain Instructions.

Thomwood Farms decided to construct a residential guest dwelling on its property near the town of Middleburg, Virginia. A. Dee Counts, a mechanical engineer, was engaged by Walter A. Macomber, Thomwood Farms' architect, to prepare the mechanical drawings and specifications for the installation of an Arkla heating and cooling system. Thereafter, bids for this project were sought and on December 16, 1964 Bender-Miller contracted with Thomwood Farms to install the system in accordance with drawings and specifications prepared by Counts. On or about July 1, 1965 it completed the installation of the system, and later received the balance due on the total contract price of $42,386.44.

The system, soon after it was placed in operation, failed to function properly. A number of difficulties were encountered. At first it was thought the problems were due to the malfunctioning of temperature controls, but it later developed that this was not the source of the trouble. By June, 1966 the Thomases were totally dissatisfied with the system and so advised Macomber, their architect.

On June 14, 1966 Macomber, Counts, and Roan, the builder of the residence, made an inspection of the system. They decided that another meeting should be had at the residence with all parties concerned. This meeting was had on July 6, 1966. Among those present were Macomber, Counts, Roan, Edward Mernone, who represented Thomwood Farms, Wesley Knight, trouble-shooter for Arkla, and Wallace Hartsook, secretary-treasurer of Bender-Miller. The meeting consumed the entire day and exhaustive tests were made in an effort to pin point the trouble. The conclusion reached was, among other things, that there were defects in the condensing water lines running from the cooling tower to the pump in the basement causing an "air lock".

On July 12, 1966 Knight wrote a letter to Counts in which he set forth specific recommendations to make the cooling system function properly. Copies of this letter were sent to Bender-Miller and other parties in attendance at the July 6th meeting. On July 25, 1966 Counts wrote Macomber making his recommendations to correct the system.

Bender-Miller did nothing to correct the system after the meeting on July 6. In August, 1966 Thomwood Farms engaged the services of a consulting engineer and another contracting firm, which was experienced in installing Arkla systems, to remedy the defects. After uncovering the condensing water lines it was discovered that they were badly bent, and the flow of condensing water was being obstructed. This condition resulted from improper installation of the lines by Bender-Miller. The lines were replaced and other defects corrected and thereafter the system functioned properly.

■ It is conceded that before another contractor was engaged no notice was given nor any demand made on Bender-Miller by Thomwood Farms or its architect to correct the system. Bender-Miller contends that the terms of the "Service Guarantee" agreed to by the parties required the architect to demand or direct Bender-Miller to make the necessary repairs, and that without such direction it was not required to correct the system. The "Service Guarantee" provided:

"(A) This Contractor [Bender-Miller] shall deliver the Heating, Ventilating, Air Conditioning and Refrigeration equipment covered by the plans and specifications to Owners complete, and in first class operating condition in every respect. He shall guarantee that the material, equipment and workmanship furnished by him shall be entirely free from defects and that he will repair or replace at his own expense, *as may be directed by the Architect,* any material, equipment or workmanship in which defects may develop within one year after date of final payment for the work. This Contractor further guarantees that all workmanship and material where not specifically mentioned in the plans and specifications shall be the best of their respective kinds, and that the construction and installation will be in accordance with the best standard practice in every detail." (Italics supplied).

Over the objection of Bender-Miller, the trial court granted Instruction No. A-7, which follows:

"The Court instructs the jury that should you believe by a preponderance of the evidence that the Defendant, Bender-Miller Company, during the month of July, 1966, had obtained sufficient knowledge concerning the performance of the air-conditioning system from which it could reasonably conclude that a defect existed as a result of its workmanship then it had a duty to repair or correct the defect. If you further believe that after having obtained such information it did not within a reasonable length of time attempt to repair or correct the defect the Plaintiffs had a right to have the defect

repaired or corrected without making a demand for performance by the Defendant, Bender-Miller Company, of its obligation to repair or correct the defect."

Bender-Miller objected to the instruction on the ground that it was contrary to the terms of the "Service Guarantee". It did not tell the jury that a demand by the architect to repair the defects was necessary before Bender-Miller would be required to perform. Bender-Miller argues that since the "Service Guarantee" required that such demand or direction be made Instruction A-7 was prejudicial and erroneous.

On the other hand, Thomwood Farms argues that the provisions of the "Service Guarantee" did not limit the remedy for breach of the contract, and thus the remedy provided therein was permissive only.

The prevailing rule is that parties to a contract may provide the remedy that will be available to them in case a breach occurs so long as the remedy provided is not contrary to the law or against public policy. However, authorities are not in accord as to the rules that govern the construction of a contract when deciding whether a remedy provided therein is exclusive of other remedies allowed by law. See Annot., 84 A.L.R.2d § 2 pp. 324 *et seq.*, and cases there cited. The better rule is that the remedy provided will be exclusive of other possible remedies only where the language employed in the contract clearly shows an intent that the remedy be exclusive. *Independent Consol. Sch. Dist. No. 24* v. *Carlstrom*, 277 Minn. 117, 151 N.W.2d 784 (1967); *Hopper* v. *Reynolds*, 81 N.M. 255, 466 P.2d 101 (1970); *Doyle* v. *Second Master-Bilt Homes, Inc.*, 453 S.W. 2d 226 (Tex. Civ. App. 1970). The foregoing rule is consistent with the rule in Virginia that the intent of the parties as expressed in their contract controls. It is the court's responsibility to determine the intent of the parties from the language they employ. *Railroad* v. *Turnpike Authority*, 202 Va. 1029, 1033, 121 S.E.2d 499, 503 (1961).

We must decide whether Thomwood Farms and Bender-Miller intended by virtue of the "Service Guarantee" that the remedy provided therein be exclusive of other remedies allowed by law.

We do not find such an intent expressed in the guarantee. It does not specifically state that Thomwood Farms is limited to the remedy provided therein, nor does it contain any words necessarily implying a duty on Thomwood Farms, or any of its agents, to make a demand upon Bender-Miller before seeking other remedies. The phrase "as

may be directed by the Architect" is permissive and cannot be construed to require that a demand be made.

Bender-Miller cites *Monroe v. Cowne*, 133 Va. 181, 112 S.E. 848 (1922) in support of its position that a direction by the architect was necessary before it was required to perform. In that case the plaintiff purchased defective milking machinery. The warranty provided, among other things, that if any of the machinery failed to work properly "notice must be given immediately to the *Company at Alexandria, Virginia,* and a reasonable time allowed to get it and remedy the defective part * * *." 133 Va. at 185, 112 S.E. at 851. The court held that the requirement in the warranty was mandatory but that the seller, by its conduct, had waived it. In the case at bar the language of the guarantee does not subject Thomwood Farms to any mandatory requirements such as those found in *Monroe*. Likewise, other cases cited by Bender-Miller are not controlling.

Since we hold that Thomwood Farms was not required to direct Bender-Miller to correct the defects in the system, the instruction as given favored Bender-Miller in that it premised the jury's finding on whether Bender-Miller had sufficient knowledge of the defects but failed to correct them. Whether Bender-Miller had sufficient knowledge of the defects but failed to act was not essential to Thomwood Farms' right to recover. Therefore, the granting of Instruction No. A-7 was harmless error as far as it affected Bender-Miller.

■ Bender-Miller also complains that the court erred in granting Instruction No. A-2. It challenges the wording of the second paragraph thereof, which provided:

"The jury are further instructed that the burden of proving that the materials, equipment or workmanship were not as warranted and guaranteed, and that the system in question was not satisfactorily constructed and installed, rests with the plaintiffs. If, from the evidence presented, you believe that the plaintiffs have failed to sustain this burden of proof, and that the defendant has kept all of its agreements with the plaintiffs under the contract, then your verdict should be for the defendant. If, on the other hand, you believe from the evidence that the defendant or its agents, or any one of them, was *negligent in furnishing bad materials, equipment or workmanship* in the installation and construction of the system in question, or failed to install the same as warranted and guaranteed, then the defendant has violated its contract, and your verdict should be for the plaintiffs". (Italics supplied).

Bender-Miller argues that the use of the phrase "negligent in fur-

nishing bad materials, equipment or workmanship" erroneously injected into the case a theory of tort liability, whereas the motion for judgment sounded in contract. We find this contention to be without merit. The mere use of the word "negligent" in the instruction did not inject a theory of tort liability. The "Service Guarantee" required Bender-Miller to furnish the materials, equipment, and workmanship "entirely free from defects". If they were not so furnished then Bender-Miller breached its guarantee regardless of any negligence on its part. The instruction, as worded, was more helpful to Bender-Miller than harmful, and therefore it cannot be heard to complain.

We find no reversible error in the judgment appealed from and it is

*Affirmed.*