BOARD OF SUPERVISORS OF FAIRFAX COUNTY

V.

SENTRY INSURANCE A MUTUAL COMPANY, ET AL.

Record No. 890777

April 20, 1990

Present: All the Justices

*David T. Stitt, County Attorney*, for appellant.

*F. Joseph Nealon (Amy S. Owen; Miles & Stockbridge*, on brief), for appellee Sentry Insurance A Mutual Company.

No brief or argument for appellee Lee Landing Development Corporation.

JUSTICE LACY delivered the opinion of the Court.

In this appeal we must determine whether a contractual statute of limitations was created by the terms of a performance bond.

In September of 1983, Lee Landing Development Corp. (Lee) entered into a contract with the Board of Supervisors of Fairfax County (the County) in which Lee agreed to construct and install certain public improvements and facilities by March 30, 1986. At the same time, Lee, as principal, and Sentry Insurance A Mutual Company (Sentry), as surety, executed a bond in favor of the County guaranteeing the performance of the contract.

Lee failed to meet its performance obligations under the contract. By letter dated March 6, 1987, the County advised Sentry of Lee's default and demanded that Sentry carry out its obligations under the performance bond. Sentry neither offered to com-

plete the project nor paid the County any portion of the performance bond.

On December 24, 1987, the County filed a motion for judgment against Lee and Sentry. Counts I and III of the motion for judgment alleged that Lee breached its performance agreement with the County. Count II alleged that Lee and Sentry were jointly and severally liable for the breach of the performance bond.

Sentry filed a motion for summary judgment, maintaining that the terms of the performance bond required the County to file suit within six months from the date it notified Sentry of Lee's default. Because the County filed its motion for judgment approximately ten months after the notice of default, Sentry asserted the County's suit was time-barred.

On November 30, 1989, the trial court entered an order in which it: (1) granted Sentry's motion for summary judgment; (2) entered judgment by consent against Lee for $98,665.16 under Count I of the motion for judgment; and, (3) at the County's request, dismissed Counts II and III against Lee with prejudice. We granted the County an appeal from that part of the trial court's order granting Sentry's motion for summary judgment.*

Our initial inquiry begins with Paragraph 5 of the performance bond which sets out the County's remedies in the event of Sentry's breach. Subsection A allows the County to terminate the parties' rights to complete the work. Subsection B allows the County to complete the work and hold Lee and Sentry jointly and severally liable for the cost of such completion. This subsection includes the method of, and limitations on, determining those completion costs. Subsection C, the section in issue, addresses enforcement of the bond through litigation, and provides that the County may:

> (C) Within six months of default . . . bring suit action or proceeding to enforce the provisions of this Bond; except that the County shall not be required to file suit, and the six months limitation shall be tolled, during the period in which

---

* Sentry maintains that the appeal is moot because Sentry was discharged from its liability when the County dismissed Count II with prejudice against Lee. However, rather than releasing Lee from its liability, the County reduced Lee's liability to judgment. Furthermore, the right to sue the surety under the bond exists independently of the right to sue the principal. *First Virginia Bank-Colonial* v. *Baker*, 225 Va. 72, 77, 301 S.E.2d 8, 11 (1983). And finally, Sentry, having sought and consented to the decree entered by the trial court, cannot now complain of prejudice arising therefrom.

Surety has elected to perform and is performing the obligations of Principal under Paragraph 4(B). In the event that any such suit, action, or proceeding is brought by the County, it is expressly agreed and understood that the damages recoverable in any such suit, action, or proceeding shall consist of and be limited to the cost of completion and/or correction of the work as required by the Agreement. Such costs shall include maintenance and/or deterioration but shall not include more than ten percent administrative and supervisory costs. Such costs shall be determined as of the earliest of the following three dates:

    1) the date of completion and/or correction of the work as defined in the Agreement;

    2) 18 months from the date suit is filed hereunder;

    3) date of trial.

Provided, however, that should the County delay in filing suit beyond 6 months after the default, costs recoverable by the County hereunder shall nonetheless be determined as of a date not later than 24 months from the date of default; and that the liability of surety shall in no case be greater than the penal sum of this Bond.

Sentry maintains that the first sentence of Subsection C indicates "an intention" to create a contractual statute of limitations. In support of its assertion that the limitation is "mandatory," Sentry turns to the statement that the "County shall not be required to file suit" while the surety is performing the principal's obligations. This phrase, Sentry asserts, "indicates" that the County was required to file suit within six months of the notice of default should the surety fail to perform the principal's obligation.

Conversely, the County maintains that the reference to filing suit within six months did not create a mandatory contractual statute of limitations and points to the final proviso of the subsection as an acknowledgement that suit could be filed more than six months after default. Sentry, however, argues that the proviso only relates to the measurement of damages when the surety is performing the obligations of the principal and does not create a different limitation or extend the six month period established in the first sentence of the subsection.

■■■ We have upheld contractual statutes of limitation for periods shorter than that fixed by statute when they were not against

public policy and the time period was not unreasonably short. *Board of Supervisors* v. *Sampson*, 235 Va. 516, 520-21, 369 S.E.2d 178, 180 (1988). But a contractual statute of limitations should not be merely implied or inferred. Like other contractual provisions, it exists by virtue of the intent of the parties as evidenced in the language of the document. *See Bender-Miller, Co.* v. *Thomwood Farms*, 211 Va. 585, 588, 179 S.E.2d 636, 639 (1971).

A review of Paragraph 5 as a whole does not lend support to Sentry's position. As we noted above, the paragraph established procedures applicable in the event of Sentry's breach. No reference to time limitations is contained in either of the first two procedures described. The only definitive time references relate to the determination of damages. In this respect, the provisions of the subsections are similar and clear.

In providing the mechanisms to measure the surety's liability for the completion costs, the parties were very specific and employed precise, mandatory terms. In Subsection C the parties established alternative dates for determining the costs but agreed that, if the County filed suit beyond six months after the date of default, Sentry would be liable for costs "determined as of a date not later than 24 months from the date of default." This outside limit for determining completion costs is the same date which would be used if the suit were filed on the last day of the six month period after default. Therefore, as the mechanism for determining damages operates unaffected by a six month filing deadline, we cannot deduce or infer that a six month filing deadline was included as a protection against the accrual of completion costs solely as a result of delay by the County in filing suit.

Clearly, there is no language in Subsection C which creates an affirmative requirement that the County file suit within a specified time; nor is there an explicit prohibition against filing suit after a specified time. The language of Subsection C falls far short of the clear language present in other cases in which we have sustained a contractual statute of limitations. *See, e.g., Southwood Builders, Inc.* v. *Peerless Ins.*, 235 Va. 164, 171, 366 S.E.2d 104, 108 (1988) (" 'No suit or action shall be commenced hereunder by a claimant, (a) after the expiration of ' "); *Sampson*, 235 Va. at 518-19, 369 S.E.2d at 179 (" 'County will file suit to resolve the . . . bond dispute within one month following its response' ").

We note two additional parts of the performance bond where Sentry agreed to flexibility in enforcement of the bond by the County. First, in setting out the procedures available in Paragraph 5, no single procedure was required. The County and Sentry agreed that the County "may elect any of the following procedures or any combination thereof."

■ Secondly, Subsection B of Paragraph 3 specifically provides that:

> The failure or refusal of obligee to take any action, proceeding, or step to enforce any remedy or exercise any right under the Agreement or the taking of any action, proceeding, or step by obligee, acting in good faith upon the belief that same is permitted by the provisions of the Agreement shall not in any way release Principal or Surety, . . . from liability under this Bond.

The language of this subparagraph further reflects an intent of the parties to provide the County with considerable flexibility in enforcing the provisions of the performance bond. Such an intent is inconsistent with a mechanical application of a mandatory six month contractual statute of limitations requiring dismissal for noncompliance.

Therefore, in consideration of the intent of the parties as reflected in the contract and in the absence of language in the contract clearly establishing a contractual statute of limitations, we will reverse the judgment of the trial court and will remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*