OPINION
 

 SPROUSE, Senior Circuit Judge:
 

 This is a consolidated appeal concerning two causes of action between Atlas Machine & Iron Works, Inc. (“Atlas”) and Bethlehem Steel Corporation (“Bethlehem”). The disputes stem from a 1988 settlement agreement (the “Agreement”) in which Atlas promised to pay Bethlehem a previously incurred debt of $13 million by April 1990, and Atlas’s failure to meet that deadline. The first action, brought by Atlas, is for breach of the settlement agreement. In the second, Bethlehem filed a
 
 *711
 
 Chapter 7
 
 [1]
 
 bankruptcy petition against Atlas.
 

 In the contract action, the district court held that Bethlehem did not breach the Agreement by filing the bankruptcy petition. It also ruled for Bethlehem on its counterclaim, holding that Atlas breached the Agreement by failing to pay its debt on time, and awarding Bethlehem judgment on the debt. We affirm the district court’s decision. In the bankruptcy action, the bankruptcy court dismissed Bethlehem’s Chapter 7 petition because it was defective. The district court affirmed, as do we.
 

 I
 

 The facts underlying the two actions are somewhat complex. Atlas and Bethlehem have been battling each other in various courts for the past several years. The heart of the litigation is an overdue, multimillion-dollar loan from Bethlehem to Atlas. Bethlehem has made several unsuccessful attempts to collect the debt, which is secured by a deed of trust on all of Atlas’s real estate and security interests in all of its personal property.
 

 One of the antecedent lawsuits between the two steel companies originated in November 1987. Atlas filed an action in federal district court in Alexandria, Virginia, charging Bethlehem with antitrust and other federal law violations, and Bethlehem counterclaimed. To settle the litigation, Atlas and Bethlehem entered into a settlement agreement in May 1988 and each company dismissed the claims pending against the other. The district court entered the dismissal order the day after the parties signed the Agreement.
 
 [2]
 

 Bethlehem drafted the Agreement. It provided in part:
 

 1. Atlas agrees that the debt due Bethlehem is $13,556,693.30 (the “Debt”) and that the Debt shall be paid in full in cash on or before April 20, 1990. The parties agree that time is of the essence in the performance of this obligation.
 

 [[Image here]]
 

 5. In the event that the Debt has not been paid in full in cash on or before April 20, 1990, Bethlehem shall have the right, without interference by Atlas, to sell or otherwise dispose of the Collateral to satisfy the debt in the manner described below. The only limitation on Bethlehem’s right to sell or otherwise dispose of the Collateral is that the sale shall be conducted in accordance with applicable state law. Atlas agrees that the foreclosures, if any, will be determined to meet a standard of commercial reasonableness, and Atlas shall not object to or complain of these foreclosures in any respect. Atlas shall promptly execute any documents requested by Bethlehem in order to accomplish the sale or other disposition of the Collateral.
 

 a. Bethlehem shall first foreclose on the real property located at Gaines-ville [54 acres — the entirety of Atlas’s real estate] and apply the net proceeds from the auction sale against the Debt.
 

 b. In the event that the Debt has not been satisfied in full after the application of the net proceeds from the foreclosure sale of the Gainesville property, Bethlehem shall then sell or otherwise dispose of the remainder of the Collateral in such order as Bethlehem deems appropriate.
 

 The Agreement defined “Collateral” as all of Atlas’s assets. Another section provided that the Agreement did not affect Bethlehem’s perfected security interests in and liens on Atlas’s assets.
 

 Atlas did not pay any of the debt by April 20, 1990, as required by the settlement agreement. As a result, on January 11, 1991, in the previously dismissed action over which the district court had retained jurisdiction, Bethlehem asked the court to enter (a) an order requiring Atlas to turn over its bank accounts, and (b) judgment on
 
 *712
 
 the debt, “to be executed upon at Bethlehem’s sole discretion.” The district court denied the motion, saying:
 

 In the event Atlas failed to pay the debt by [April 20, 1990], the settlement agreement provided that Bethlehem must first proceed through foreclosure on Atlas’s Gainesville property in order to satisfy the debt. Proceedings are currently pending in [Virginia state court] and there is no further enforcement action to be taken by this court at this time.
 

 The referenced Virginia action was one brought in 1987 by Williams Industries, Inc., a large Atlas shareholder, against both Atlas and Bethlehem, in the Circuit Court of Prince William County. Bethlehem had attempted to foreclose on Atlas’s land, spurring Williams Industries to file an injunctive action to bar the foreclosure. The circuit court granted a temporary injunction, which Bethlehem moved to dissolve in May 1990 after Atlas failed to pay the debt by the Agreement’s April 1990 deadline. After a hearing the state court denied Bethlehem’s motion, made the injunction permanent, and scheduled a trial on the merits. Williams and Bethlehem settled on July 1, 1991, the day the state trial was scheduled to begin, and the court dissolved the injunction.
 
 [3]
 
 On July 26, 1991, Bethlehem served Atlas with notice that a foreclosure sale would be held in June 1992.
 

 In the meantime, in April 1991 Bethlehem had filed its petition to place Atlas into bankruptcy, and in May 1991 Atlas brought the contract action at issue in this appeal. It alleged that Bethlehem had breached the Agreement by trying to collect the debt through Chapter 7 instead of foreclosure.
 
 [4]
 
 Bethlehem counterclaimed, alleging that Atlas breached the Agreement by failing to pay the debt on time, and seeking judgment on the debt.
 

 Bethlehem presented a successful summary judgment motion on both Atlas’s claim and its own counterclaim. The district court held that Atlas breached the Agreement by not meeting the April 1990 deadline, and awarded Bethlehem judgment on the debt. It also held that the Agreement did not prohibit Bethlehem from collecting the debt through Chapter 7.
 

 II
 

 We first consider the appeal in the contract action. We, of course, review
 
 de novo
 
 the district court’s grant of summary judgment.
 
 Kowaleviocz v. Local 333,
 
 942 F.2d 285, 288 (4th Cir.1991). We must affirm if no genuine issue of material fact exists and Bethlehem is entitled to judgment as a matter of law.
 
 Id.
 

 Atlas maintains that the district court erred in holding that it breached the settlement agreement by failing to repay the debt by April 1990. Paragraph 1 of the Agreement stated:
 

 Atlas agrees that the debt due Bethlehem is $13,556,693.30 (the “Debt”) and that the Debt shall be paid in full in cash on or before April 20, 1990. The parties agree that time is of the essence in the performance of this obligation.
 

 This language unambiguously required Atlas to pay the debt by April 20, 1990. Therefore, its failure to comply with the deadline constituted a breach of the Agreement.
 

 There is simply no merit to Atlas’s argument that its failure to pay could not
 
 *713
 
 constitute a breach because paragraph 5 of the Agreement specified foreclosure as Bethlehem’s exclusive recourse in the event of nonpayment. It is not unusual for a contract to specify a remedy in the event of a breach.
 
 See, e.g., Bender-Miller Co. v. Thomwood Farms, Inc.,
 
 211 Va. 585, 179 S.E.2d 636, 638 (1971). A breach of such a contract does not void it; rather, the remedy is limited to the one listed in the contract — assuming it is exclusive.
 

 The weakness in Atlas’s argument is that the Agreement did not provide that foreclosure would be Bethlehem’s exclusive remedy. The parties agreed foreclosure would be an available remedy in the event of Atlas’s breach, but not the sole remedy. The express language provided that if Atlas failed to pay the debt on time, Bethlehem would have the
 
 right,
 
 not the obligation, to foreclose on Atlas’s assets:
 

 In the event that the Debt has not been paid in full in cash on or before April 20, 1990,
 
 Bethlehem shall have the right,
 
 without interference by Atlas, to sell or otherwise dispose of the Collateral to satisfy the debt in the manner described below.
 

 (Emphasis added). It is also true that Bethlehem’s right to sell or dispose of the property,
 
 if exercised,
 
 was limited by the language chosen by the two parties: Bethlehem “shall first foreclose” on Atlas’s land, and “shall then sell or otherwise dispose of” its remaining assets, if necessary. The limitation, however, must be construed with the unequivocal language of the Agreement citing foreclosure as an optional remedy for Bethlehem, not an exclusive one.
 

 In
 
 Bender-Miller,
 
 179 S.E.2d 636, the Virginia Supreme Court of Appeals held that an agreement to limit remedies must be clearly expressed in the contract. It said:
 

 [P]arties to a contract may provide the remedy that will be available to them in case a breach occurs_ However, ... the remedy provided will be exclusive of other possible remedies only where the language employed in the contract clearly shows an intent that the remedy be exclusive.
 

 Id.
 
 at 638. The contract in that case provided that Bender-Miller “will repair or replace at his own expense, as may be directed by [Thomwood Farms], any material, equipment or workmanship in which defects may develop.”
 
 Id.
 
 The court found that the repair-or-replace remedy was optional, not exclusive, because the phrase “as may be directed by [Thomwood Farms]” was permissive.
 
 Id.
 
 at 639. The phrase used in the Agreement here, “Bethlehem shall have the right ... to sell or otherwise dispose of the Collateral,” is similarly permissive. Consequently, when Atlas breached the Agreement by failing to pay the debt on time, Bethlehem was free to pursue any legal remedy — including, but not limited to, foreclosure. Because the contract did not exclude bankruptcy as a remedy, the district court correctly concluded that Bethlehem did not breach the Agreement by filing a bankruptcy petition against Atlas.
 

 The district court’s decision to award Bethlehem judgment on its counterclaim for Atlas’s nonpayment was also correct. We are unpersuaded by Atlas’s argument that Bethlehem was foreclosed under principles of res judicata from receiving a judgment. Contrary to Atlas’s contention, when the district court in 1988 dismissed Bethlehem’s action for judgment on the debt with prejudice pursuant to the Agreement, Bethlehem gave up only its right to enforce the terms of the pre-1988 loan documents; it did not give up its right to enforce the terms of the Agreement. Nor do principles of res judicata or collateral estoppel apply with respect to the district court’s denial of Bethlehem’s January 11, 1991 motion for judgment on the debt. That earlier ruling of the district court was not on the merits,
 
 see Ivy v. Dole,
 
 610 F.Supp. 165, 167 (E.D.Va.1985),
 
 aff'd,
 
 811 F.2d 1505 (4th Cir.1987), nor was the issue that was ruled on fully and fairly litigated,
 
 see Moore v. Allied Chem. Corp.,
 
 480 F.Supp. 377, 382 (E.D.Va.1979). The district court heard no testimony, examined no evidence, and made no findings of fact or conclusions of law. It clearly deferred rul
 
 *714
 
 ing on the merits, stating that it would take “no further enforcement action ... at this time.”
 

 Ill
 

 We turn now to Bethlehem’s appeal from the dismissal of its Chapter 7 bankruptcy petition against Atlas. The bankruptcy court deemed the petition defective under 11 U.S.C. § 303(b) because Bethlehem filed as a single petitioner even though Atlas had twelve or more creditors. Section 303(b) permits a single creditor to file an involuntary petition only if the debtor has fewer than twelve creditors; if the debtor has twelve or more creditors, at least three creditors must file the petition. It also describes creditors that may not be counted for this purpose.
 
 [5]
 

 On April 22, 1991, Atlas filed its motion to dismiss the bankruptcy petition on the grounds that it had twelve or more creditors. During the bankruptcy court’s hearing on the motion, Bethlehem’s in-house counsel, Edith Laver, testified that she and Bethlehem’s internal auditor had examined Atlas’s financial records for two days before Bethlehem filed the petition. Although Atlas’s financial records showed it had sixty-six trade creditors, Laver testified that she concluded only four or five of them had “claims” against Atlas; therefore, only these four or five qualified as § 303(b) creditors. Laver testified that she believed a “claim” included only a debt past due. If Atlas paid a creditor on time, she believed it did not have a “claim” against Atlas, and therefore it was not a creditor to be counted under § 303(b).
 
 [6]
 
 The bankruptcy court declared Laver’s definition of “claim” an "improper interpretation” of the Bankruptcy Code, and found it an “unreasonable” basis on which to conclude that Atlas had fewer than twelve creditors for purposes of section 303(b).
 
 [7]
 

 After the hearing, the bankruptcy court granted Atlas’s motion to dismiss the petition. On May 3, 1991, it ruled:
 

 1. That [Bethlehem] filed the involuntary petition for the purpose of collecting a debt owed to it by [Atlas];
 

 2. That administration of this case in bankruptcy would be of no benefit to other creditors who are being paid currently;
 

 3. That [Atlas] had twelve or more creditors as of the petition date;
 

 4. That in light of [Bethlehem’s] review of [Atlas’s] books and records, it was unreasonable for [Bethlehem] to conclude that [Atlas] had fewer than twelve creditors when it filed the petition. ...
 

 The district court reviewed the bankruptcy court’s dismissal
 
 de novo
 
 and affirmed. We, in turn, affirm the district court.
 

 On appeal, Bethlehem argues primarily that the bankruptcy court erred by not conducting a detailed analysis to determine whether any of Atlas’s sixty-six creditors might, in fact, have been ineligible as credi
 
 *715
 
 tors for purposes of the § 303(b) calculation. It notes correctly that creditors with the following claims are ineligible: (a) claims contingent as to liability, (b) claims subject to a bona fide dispute, (c) claims of employees of the debtor, (d) claims of insiders of the debtor, (e) claims of recipients of transfers voidable under 11 U.S.C. §§ 544, 545 (statutory liens), 547 (preferences), 548 (fraudulent transfers), 549 (post-petition transfers), or 724(a) (penalty claims). 11 U.S.C. § 303(b)(1), (2).
 

 Bethlehem’s original argument that only four or five of Atlas’s sixty-six trade creditors should be counted was not grounded on any explicit provision of § 303(b). It contended solely that only these four or five had “claims” against Atlas. It reasoned that there could be no “claim” against Atlas short of default on an undisputed debt. We agree with the bankruptcy and district courts that the definition on which Bethlehem relied finds no support in either the Bankruptcy Code or precedent.
 
 See
 
 11 U.S.C. § 101(5)(A);
 
 Ohio v. Kovacs,
 
 469 U.S. 274, 279, 105 S.Ct. 705, 708, 83 L.Ed.2d 649 (1985).
 

 Abandoning this rather awkward position, Bethlehem now argues that the bankruptcy court was obligated to investigate whether any of Atlas’s sixty-six creditors held claims of the types disqualified under section 303(b). In its appeal to the district court, Bethlehem argued for the first time that many of the sixty-six creditors’ claims were the subject of bona fide disputes. On appeal to this court, it contends for the first time that some claims were voidable under 11 U.S.C. § 547 as preferential transfers.
 

 In making the first of its two new arguments, Bethlehem reasons that a creditor who is paid on time “would have no actionable claim against Atlas. Therefore, such a claim against Atlas would be subject to a bona fide dispute prior to the time payment became due.” This proposition is patently unsupportable. Although courts have not agreed on a precise definition of “bona fide dispute,” it clearly entails some sort of meritorious, existing conflict.
 
 See, e.g., In re Rimell,
 
 946 F.2d 1363, 1365 (8th Cir.1991),
 
 cert. denied,
 
 — U.S. -, 112 S.Ct. 2275, 119 L.Ed.2d 202 (1992);
 
 B.D.W. Assocs., Inc. v. Busy Beaver Bldg. Ctrs.,
 
 865 F.2d 65, 66-67 (3d Cir.1989);
 
 Bartmann v. Maverick Tube Corp.,
 
 853 F.2d 1540, 1543-44 (10th Cir.1988);
 
 In re Busick,
 
 831 F.2d 745, 749-50 (7th Cir.1987);
 
 In re Caucus Distribs., Inc.,
 
 83 B.R. 921, 928-29 (Bankr.E.D.Va.1988); 2
 
 Collier on Bankruptcy
 
 ¶ 303.08, at 38-40 (15th ed. 1988). There is likewise no merit to Bethlehem’s argument that Atlas’s decision to pay another creditor while declining to pay Bethlehem constitutes a preferential transfer under § 547. A simple perusal of that section demonstrates that Bethlehem’s reasoning is entirely without statutory support.
 

 As to Bethlehem’s contention that Atlas was required to establish the number of § 303(b) creditors, the burden of proof was not on Atlas.
 
 [8]
 
 Bethlehem, as the sole petitioner, had the burden of showing Atlas had fewer than twelve § 303(b) creditors.
 
 See, e.g., Rimell,
 
 946 F.2d at 1365 (petitioner has burden on issue of bona fide disputes);
 
 Bartmann,
 
 853 F.2d at 1544 (same);
 
 In re Reid,
 
 773 F.2d 945, 946 (7th Cir.1985) (petitioner has burden on issues of contingent liability and bona fide disputes);
 
 In re Charon,
 
 94 B.R. 403, 405-06 (Bankr.E.D.Va.1988) (petitioner has “burden of. proving that it satisfied the jurisdictional requirements of § 303(b)”; here, petitioner failed to show that its claims “aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims,” as required, by § 303(b));
 
 In re McDonald Trucking Co.,
 
 76 B.R. 513, 516 (Bankr.W.D.Pa.1987) (petitioner has burden of satisfying statutory requirements for commencing involuntary case under § 303; debtor’s refusal to pro
 
 *716
 
 vide petitioner with list of its other creditors does not entitle petitioner to claim debtor has fewer than twelve creditors);
 
 In re James Plaza Joint Venture,
 
 67 B.R. 445, 448 (Bankr.S.D.Tex.1986) (“It is plaintiffs’ burden to demonstrate the number of creditors of [the] debtor’s estate.”); 2
 
 Collier on Bankruptcy
 
 ¶ 303.15, at 76 (15th ed. 1988) (“The burden of proof is on the petitioning creditors to establish that the statutory requirements of section 303 have been satisfied.”).
 
 [9]
 

 Likewise, we find no error in the bankruptcy court’s determination that Bethlehem was not entitled to “a reasonable opportunity [to have] other creditors ... join in the petition before a hearing [was] heard thereon.” Bankr.Rule 1003(b). A defective petition may be dismissed without granting the petitioner an opportunity to correct the defect if the petitioner filed it in bad faith.
 
 In re Crown Sportswear, Inc.,
 
 575 F.2d 991, 993 (1st Cir.1978). To determine bad faith, a court examines whether a reasonable person would have filed the petition (objective test) as well as the motivations of the petitioner (subjective test).
 
 In re Caucus Distribs., Inc.,
 
 106 B.R. 890, 924 (Bankr.E.D.Va.1989). Here, the bankruptcy court determined that Bethlehem’s decision to file the petition was unreasonable. That conclusion was amply supported by the evidence, particularly Laver’s testimony. Additionally, the bankruptcy court made an implicit finding of subjective bad faith, in that it concluded Bethlehem filed the petition for an improper purpose. In light of Bethlehem’s concessions that it filed the petition to collect the debt,
 
 [10]
 
 the record evidence supports the court’s conclusion.
 
 [11]
 
 Accordingly, the bankruptcy court properly dismissed the petition without giving Bethlehem the opportunity to seek out other creditors to join as petitioners.
 

 No. 92-1111 — AFFIRMED.
 

 No. 92-1684 — AFFIRMED.
 

 [1]
 

 . 11 U.S.C. § 701
 
 et seq.
 

 [2]
 

 . There is no diversity between the parties. Although the district court dismissed the federal action after the settlement agreement was executed, it retained jurisdiction. Therefore, when Atlas brought this state-law contract action in May 1991, the district court was deemed the appropriate forum.
 

 [3]
 

 . Williams then settled with Atlas. Williams agreed to drop its lawsuit in exchange for Atlas’s agreement to submit its assets to the jurisdiction of the circuit court and to have a conservator appointed for an initial three-year term. Under a proposed plan, the conservator was to supervise and preserve Atlas’s assets for disposition. Over Bethlehem’s objections the circuit court adopted the plan, enjoining Atlas’s creditors from "further collection or enforcement efforts” against Atlas’s assets. However, Bethlehem filed a successful appeal with the Virginia Supreme Court. The supreme court, finding insufficient grounds under Virginia state law for the appointment of a conservator, reversed the circuit court and nullified the plan.
 
 Bethlehem Steel Corp. v. Williams Indus., Inc.,
 
 425 S.E.2d 484, 487 (Va.1993).
 

 [4]
 

 . Atlas’s complaint also included claims for breach of the implied duty of good faith, which Atlas lost on summary judgment, and tortious interference with business advantage, which was settled and dismissed. Neither claim has been appealed.
 

 [5]
 

 .Section 303(b) provides:
 

 An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
 

 (1) by three or more entities, each of which is ... a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute, ... if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holder of such claims;
 

 (2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $5,000 of such claims....
 

 [6]
 

 . Bethlehem’s internal auditor testified the same. The bankruptcy court found the testimony so incredible that it suspected collusion: "I wouldn’t be surprised if they [Laver and the auditor] hadn’t discussed it to come up with that definition [of ‘claim’].”
 

 [7]
 

 . Section 101 defines a claim as the "right to payment,
 
 whether or not such right is
 
 reduced to judgment, liquidated, unliquidated, fixed, contingent,
 
 matured, unmatured,
 
 disputed, undisputed, legal, equitable, secured, or unsecured.” 11 U.S.C. § 101(5)(A) (emphasis added). It defines a "creditor” partly as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor.”
 
 Id.
 
 § 101(10)(A).
 

 [8]
 

 . Bethlehem argues that Bankruptcy Rule 1003(b) required Atlas to file a list of its creditors once Bethlehem filed its petition. As Rule 1003(b) makes clear, the debtor must file such a list only after it files an
 
 answer
 
 to the petition. See
 
 In re Caucus Distribs., Inc.,
 
 106 B.R. 890, 908 (Bankr.E.D.Va.1989). Atlas filed a motion to dismiss Bethlehem’s petition; it never filed an answer.
 

 [9]
 

 . In contrast, it is the
 
 debtor’s
 
 burden to show, when it makes such an allegation, that the creditor filed the petition in bad faith.
 
 See, e.g., Basin Elec. Power Coop. v. Midwest Processing Co.,
 
 769 F.2d 483, 486 (8th Cir.1985),
 
 cert. denied,
 
 474 U.S. 1083, 106 S.Ct. 854, 88 L.Ed.2d 894 (1986);
 
 In re Crown Sportswear, Inc.,
 
 575 F.2d 991, 993 (1st Cir.1978);
 
 In re Hutter Assocs., Inc.,
 
 138 B.R. 512, 516 (Bankr.W.D.Va.1992);
 
 In re Caucus Distribs., Inc.,
 
 106 B.R. 890, 923 (Bankr.E.D.Va.1989).
 

 [10]
 

 . For example, at the hearing before the bankruptcy court Bethlehem stated:
 

 Your honor, it is clear from the testimony, and from everything that’s gone on here, that there is a problem as to payment of the debt by Atlas to Bethlehem. Bethlehem has taken steps to try to collect it over the course of time, all to no avail.
 

 Atlas’s testimony is that they are current. They are current with everybody [exjcept Bethlehem Steel. So, for some reason, Bethlehem Steel has continued to wait and wait and wait and wait.
 

 In its briefs to this court, Bethlehem in effect concedes that it filed the petition to collect the debt: "The trial court was correct in ruling that Bethlehem was entitled to pursue bankruptcy remedies against Atlas where Atlas admitted its failure to pay the debt due under the settlement agreement_”
 

 [11]
 

 . Debt collection is not a proper purpose of bankruptcy.
 
 See Caucus Distribs.,
 
 106 B.R. at 928;
 
 Report of the Comm’n on Bankruptcy Laws of the United States,
 
 pt. I, at 75 (July 1973).