UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-1639

KENNETH NDEH,

                Plaintiff - Appellant,

        v.

MIDTOWN ALEXANDRIA, L.L.C.,

                Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Leonie M. Brinkema, District Judge.  (1:07-cv-00480-LMB)

Argued:  September 25, 2008          Decided:  November 18, 2008

Before TRAXLER, Circuit Judge, HAMILTON, Senior Circuit Judge, and James C. DEVER III, United States District Judge for the Eastern District of North Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Kevin Donal McInroy, MCINROY & RIGBY, L.L.P., Arlington, Virginia, for Appellant.  Richard Daniel Kelley, REED SMITH, L.L.P., Falls Church, Virginia, for Appellee.  **ON BRIEF:** Michael S. Dingman, REED SMITH, L.L.P., Falls Church, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this appeal, we examine whether, as a matter of Virginia law, a condominium purchase contract providing that the purchaser "shall have . . . either" the option to rescind the contract and receive a return of his down payment "or" the option to wait until construction of the condominium unit is completed and proceed with the purchase eliminates the real estate purchaser's traditional right to specific performance where the condominium unit is not completed on time. Because we conclude that such contract language does not eliminate the right to specific performance under Virginia law, we affirm.

I.

On August 4, 2005, appellant Kenneth Ndeh ("appellant" or "Ndeh") entered into a purchase and sale contract ("the contract") with appellee Midtown Alexandria, L.L.C. ("appellee" or "Midtown") to purchase a condominium ("the condo") in Alexandria, Virginia. See J.A. at 13—23.[1] The purchase price was nearly $500,000. See id. at 13. Ndeh put approximately $50,000 down on the condo at the time he signed the contract. See id. at 14.

---

[1] Citations to "J.A." refer to the joint appendix filed by the parties.

By February 2007, the condo market in Alexandria, Virginia had changed, and Ndeh decided that he no longer wanted the condo. Ndeh sent Midtown a letter demanding a return of his $50,000 deposit and purporting to revoke his assent to the contract. See id. at 10, 26. However, Midtown refused to return the deposit or grant the rescission. See id.

On April 20, 2007, Ndeh filed suit against Midtown in Virginia state court. See id. at 8—11. Ndeh alleged that the contract violated various provisions of the Interstate Land Sales Full Disclosure Act ("ILSA"), 15 U.S.C. §§ 1701 et seq. J.A. at 9—11. Ndeh sought a declaratory judgment that the contract was void, and a judgment in his favor returning his $50,000 deposit from Midtown. Id. at 10—11. Midtown removed the action to the Eastern District of Virginia. Id. at 26.

Midtown then moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Id. at 24. Midtown argued that the contract was exempt from ILSA. See id. at 28—34. Midtown noted that "the sale or lease of any improved land on which there is a . . . condominium . . . building, or the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years," is exempt from ILSA. See 15 U.S.C. § 1702(a)(2); see also J.A. at 28-34. The parties agreed that Midtown's project is a "condominium building" within the meaning of ILSA and that the condominium

3

building was in fact built "within a period of two years." See J.A. at 113. However, they disputed whether the contract obligated Midtown to construct the condominium building "within a period of two years." See, e.g., id. at 30-31, 40—41.

To answer this question, the parties both cited the Department of Housing and Urban Development's ("HUD") guidelines interpreting ILSA. See id. at 29, 37–39. These guidelines provide: "If a seller (developer) is relying on this [two-year] exemption and the . . . condominium . . . building is not complete, the contract must obligate the seller to complete the building within two years. If the contractual obligation is not present, the sale is not exempt." Interstate Land Sales Registration Program Final Rule, 61 Fed. Reg. 13,596, 13,603 (Mar. 27, 1996); see also J.A. at 69. Here, the contract states, "[Midtown] shall complete the unit, and settlement shall occur, within twenty-four months after the date [Ndeh] signs [the contract]." J.A. at 17 (contract § 8(a)). However, the HUD guidelines further state:

> The contract must not allow for nonperformance by the seller at the seller's discretion. Contracts that permit the seller to breach virtually at will are viewed as unenforceable because the construction obligation is not an obligation in reality. Thus, for example, a clause that provides for a refund of the buyer's deposit if the seller is unable to close for reasons normally within the seller's control is not acceptable for use under this exemption. Similarly, contracts that directly or indirectly waive the buyer's right to specific performance are treated as

4

> lacking a realistic obligation to construct.  **HUD's position is not that a right to specific performance must be expressed in the contract, but that any such right that purchasers have must not be negated.  For example, a contract that provides for a refund or damage action as the buyer's sole remedy would not be acceptable**.

Interstate Land Sales Registration Program Final Rule, 61 Fed. Reg. at 13,603 (emphasis supplied); see also J.A. at 69.

Ndeh argued that the contract violated this provision of the HUD guideline.  He cited the following contract provision:

> If settlement shall not have occurred within the [24-month] period allowed in Section 8 due to reasons within [Midtown's] control, [Ndeh] shall have the option of either:  (i) terminating this [contract] by written notice to [Midtown] . . . , in which event [Midtown] shall . . . cause the [$50,000 deposit] . . . to be returned to [Ndeh], and neither party shall have any further liability or obligation hereunder; or (ii) electing to proceed with the purchase of the Condominium Unit when the same is available.

J.A. at 20 (contract § 19(a)).  There was (and is) no legitimate dispute that neither the first clause (rescission) nor the second clause (simply waiting) of section 19(a) satisfies the HUD guideline.  However, the right to seek specific performance would satisfy the HUD guideline, if Ndeh has that right.  Accordingly, the parties dispute whether the "shall have . . . either . . . or" language in section 19(a) of the contract "directly or indirectly waive[s] the buyer's right to specific performance."   See id. at 20, 69; Interstate Land Sales Registration Program Final Rule, 61 Fed. Reg. at 13,603.

Ndeh argued to the district court that the plain language of section 19(a) did waive his right to specific performance. According to Ndeh, "The plain and natural meaning of Section 19 . . . is that [Ndeh's] only remedy if Midtown does not complete and deliver the Unit to him within ILSA's two-year completion period is the return of his deposit," or simply waiting until Midtown completes construction (which is really no remedy at all). See J.A. at 51. By contrast, Midtown argued to the district court that the disputed language does not eliminate Ndeh's right to specific performance. According to Midtown, "[s]ection 19(a)(ii) neither expressly nor impliedly takes away any of [Ndeh's] legal or equitable rights;" rather, section 19(a) merely clarifies what some of Ndeh's rights are. See id. at 105.

The district court held a hearing on the motion to dismiss. See id. at 111-20. After considering the parties' memoranda, their arguments at the hearing, and the transcript from another case before another district judge that involved almost precisely the same issues (see id. at 87-103), the district court granted the motion to dismiss. See id. at 120. The district court relied on two key facts. First, "nothing in the language of [section] 19 . . . actually negates the potential for seeking specific performance." Id. at 118. Second, another provision in the contract discussed the waiver of rights to a

6

jury trial.  In bold, all-capitalized letters, that section states:  "[Ndeh] and [Midtown] each waive trial by jury in any lawsuit, action, proceeding or counterclaim brought by either party against the other whether directly or indirectly, with respect to any matters whatsoever regarding this agreement, the condominium unit or the condominium."  Id. at 21 (contract § 22(b); double emphasis removed).  The district court reasoned that the contract would not include such broad language waiving jury trial rights for "any" action with respect to "any" matter relating to the contract if there were not other possible rights—such as specific performance—contemplated by the contract, but not expressly listed in section 19(a).  See id. at 116–18, 120.  Ndeh now appeals.

## II.

Because this appeal involves the district court's grant of a motion to dismiss, the standard of review is de novo.  See, e.g., Sucampo Pharms., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 550 (4th Cir. 2006).  Further, contract interpretation is a question of law subject to de novo review.  See, e.g., Seabulk Offshore, Ltd. v. Am. Home Assurance Co., 377 F.3d 408, 418 (4th Cir. 2004).  Moreover, because "HUD's interpretation of what constitutes an obligation to construct a building relies on general principles of contract law . . . to be decided . . .

7

under the laws of the jurisdiction in which the construction project is located," Interstate Land Sales Registration Program Final Rule, 61 Fed. Reg. at 13,603, we look to Virginia law to address this contract issue. The dispostive question is therefore whether, as a matter of Virginia law, the "shall have . . . either . . . or" language of section 19(a) of the contract eliminates Ndeh's right to specific performance by making the listed remedies exclusive.

The Supreme Court of Virginia has not addressed the precise contract language at issue in this case. Nonetheless, the Supreme Court of Virginia stated the governing rule of law concerning the exclusivity of remedies in <u>Bender-Miller Co. v. Thomwood Farms, Inc.</u>, 211 Va. 585, 179 S.E.2d 636 (1971). That case provides:

> [A]uthorities are not in accord as to the rules that govern the construction of a contract when deciding whether a remedy provided therein is exclusive of other remedies allowed by law. The better rule is that the remedy provided will be exclusive of other possible remedies only where the language employed in the contract clearly shows an intent that the remedy be exclusive.

211 Va. at 588, 179 S.E.2d at 638 (internal citations omitted). Ndeh agrees that the <u>Bender-Miller</u> rule governs this case, and argues that here, the "shall have . . . either . . . or" language in section 19(a) of the contract clearly shows an

intent that the two listed remedies be exclusive. See Appellant's Br. 19–22; Appellant's Reply Br. 8–9. We disagree.

In Bender-Miller, the Supreme Court of Virginia placed the presumption against exclusivity. Thus, a listed remedy is exclusive of other possible unlisted remedies "only where the language employed in the contract clearly shows an intent that the [listed] remedy be exclusive." 211 Va. at 588, 179 S.E.2d at 638 (emphasis supplied). This reading of Bender-Miller comports with cases from this court and other courts that have applied Bender-Miller. See Atlas Machine & Iron Works, Inc. v. Bethlehem Steel Corp., 986 F.2d 709, 713 (4th Cir. 1993); People Karch Int'l Co. v. Peuler, No. 94-1144, 1994 WL 702105, at *7 (4th Cir. Dec. 15, 1994)(per curiam)(unpublished); Safeway, Inc. v. CESC Plaza Ltd. P'ship, 261 F. Supp. 2d 439, 444 n.1 (E.D. Va. 2003); In re James R. Corbitt Co., 48 B.R. 937, 941 (Bankr. E.D. Va. 1985); cf. TQY Invs. v. Rodgers Co., 26 Va. Cir. 40, 48 (Cir. Ct. 1991)(discussing the presumption against exclusivity without citing Bender-Miller: "Where, however, there is no limitation in the contract which makes the remedies enumerated therein exclusive, a party is entitled to the remedies thus specified, or he may at his election pursue any other remedy which the law affords.").

Admittedly, none of the above-cited cases address the precise either/or contract language found in this case.

9

However, the question is whether the contract clearly makes the listed remedies exclusive. Notably, the contract does not state that Ndeh shall have "only" the listed remedies or that he is "limited to" the listed remedies. In sum, the contract does not include any clear language of exclusivity.

In analyzing the contract at issue, we also cannot ignore that this case involves a real estate contract. Under Virginia law, each piece of real estate is unique, and specific performance is the preferred remedy for breach of a contract to convey real property. See, e.g., Walker v. Henderson, 151 Va. 913, 933, 145 S.E. 311, 317 (1928)("Ordinarily the specific performance of a contract for the sale of real estate is a matter of course, whenever the required equitable conditions are fulfilled."); Hale v. Wilkinson, 62 Va. (21 Gratt.) 75, 80 (1871)("But land always has, in the eye of the law, a peculiar value, and a contract for the sale and purchase of it, if unobjectionable, will therefore be specifically executed. In no other way can the parties receive the full benefit of their contract." (emphasis supplied)); Gaynor v. Hird, 11 Va. App. 588, 592—93, 400 S.E.2d 788, 790 (Ct. App. 1991)("It has long been the law in Virginia that each piece of real property has 'a peculiar value.' Because the law recognizes the unique nature of real property, the right to enforce title in real property can be specifically enforced." (internal citation and quotation

10

omitted)); <u>Pocahontas Mining Ltd. Liab. Co. v. Jewell Ridge Coal Corp.</u>, 66 Va. Cir. 498, 500 (Cir. Ct. 2003)("Virginia law has long held that specific performance is the preferred remedy where real estate is involved, as the law recognizes the unique nature and characteristics of real property."); <u>see</u> <u>also</u> 1 John L. Costello, <u>Virginia Remedies</u> § 14.01 (2008)(stating that "contracts for the sale of interests in realty are specifically enforced as a matter of course" under Virginia law (quotation omitted)). Ndeh's reasoning would read this long-standing equitable remedy out of this real estate contract, even though Virginia courts have declared specific performance to be the preferred remedy in real estate contracts. In light of the real estate contract at issue in this case, the contract language, and <u>Bender-Miller</u>, Ndeh's argument fails.[2]

## III.

For the reasons explained above, we affirm the district court's judgment.

<u>AFFIRMED</u>

---

[2] Although Ndeh suggested at oral argument that we should read the contract against its drafter (Midtown) and thereby take away the right to specific performance from Ndeh and those similarly situated, we need not resort to the contra proferentem canon to resolve this appeal.