**In re GILLS CREEK PARKWAY ASSO-CIATES, L.P., a South Carolina Limited Partnership, Alleged Debtor.**

**Civil Action No. 95–74292.**

United States Bankruptcy Court, D. South Carolina.

Nov. 3, 1995.

R. William Metzger, Columbia, SC, for alleged debtor.

Brian W. Bennett, Columbia, SC, for petitioning creditor.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon a Motion to Dismiss the Involuntary Petition, to Abstain and/or, for Relief from the Automatic Stay, and to Award Attorneys' Fees, Costs and Damages ("Motion") filed on August 31, 1995 by the Alleged Debtor, Gills Creek Parkway Associates, L.P., a South Carolina Limited Partnership ("Gills Creek") in response to the Involuntary Petition of Anderson Brothers Bank ("ABB") filed on August 11, 1995.[1] After consideration of the

---

1. ABB filed its Reply to the Motion on September 19, 1995. At the request of this Court, Gills

pleadings, the exhibits and the arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. In 1988, Pinkerton & Laws, a Georgia construction company ("P & L"), entered into a joint venture arrangement with David Lucas ("Lucas") to construct and develop a three hundred and four (304) unit apartment complex in Columbia, South Carolina, which came to be known as Hampton Greene Apartments. The parties agreed that, in exchange for $1.1 million of equity in the form of a standby letter of credit in favor of the construction lender, First Union National Bank ("First Union"), P & L would be allowed to construct the project and receive a project ownership position in the name of its wholly-owned subsidiary Chevre, Inc. ("Chevre"), which became a Limited Partner in Gills Creek, the owner of the apartment development.

2. For his part, Lucas was to furnish the site, guaranty the construction loan, and furnish equity in the form of a standby letter of credit favoring First Union in the amount of $487,000. In turn, Lucas would become a Limited Partner and furnish the general partner for the Gills Creek limited partnership. The general partner was to be a corporation wholly-owned by Lucas called Hampton Greene Corp.

3. The closing occurred on January 6, 1989, the same date Hampton Greene was organized as a corporation. The Gills Creek Agreement and Certificate of Limited Partnership was filed with the South Carolina Secretary of State on January 9, 1989.

4. Lucas furnished $250,000 of his $487,000 equity obligation by causing Gills Creek, by Hampton Greene, the general partner, to sign two promissory notes on January 4, 1989. One note was to ABB, which in turn issued a letter of credit to the South Carolina National Bank (SCN) to secure its $250,000 letter of credit favoring First National. A second note was to SCN guaranteeing the ABB letter of credit for the benefit of SCN.

In substance, the two notes amounted to one alleged debt of Gills Creek to become due either to ABB or to SCN.

5. Subsequently, P & L, through Chevre, made additional funding advances to the project resulting in the substitution of Chevre for Hampton Greene as general partner of Gills Creek. When the construction loan fell into default, First Union called the letters of credit, requiring ABB to reimburse SCN $250,000, thereby activating the $250,000 note due ABB executed by Hampton Greene.

6. On or about December 31, 1991, P & L sold the outstanding shares of Chevre to Union Street Investments, Inc. ("Union Street"), which also reimbursed P & L for all amounts that P & L had previously advanced the project through Chevre.

7. In March, 1994, ABB made a demand on Gills Creek for reimbursement of the $250,000 and sued Gills Creek and Chevre in the Richland County, South Carolina, Court of Common Pleas ("state court") for recovery of the $250,000 indebtedness represented by the Gills Creek notes. Gills Creek and Chevre filed an Answer and Counterclaim in the state court action captioned *Anderson Brothers Bank, Plaintiff v. Gills Creek Parkway Associates, L.P., a South Carolina Limited Partnership; and Chevre, Inc., Defendants* (Richland County Court of Common Pleas Civil Action No. 94–CP–40–0870).

8. In the summer of 1994, ABB learned of Gills Creek's efforts to sell the apartment development and moved for summary judgment on June 28, 1994 and for a writ of attachment on July 1, 1994.

9. On August 16, 1994, the state court judge ordered Gills Creek to deposit $301,100 from the proceeds of the sale of the project into an interest-bearing account until further order of the court.

10. On November 2, 1994, the state court denied ABB's motion for summary judgment on the ground that "Plaintiff has not carried its burden of proving that no issues of material fact remain in dispute."

Creek and ABB filed by consent a Joint Stipulation of Facts and Additional Evidentiary Documents on September 29, 1995.

11. Gills Creek sold the development in August 1994 for $11,268,735, and, after payment of First Union and other debts, Gills Creek netted proceeds of $2,737,000, from which it placed $301,100 in escrow pursuant to the state court order, and paid the balance of approximately $2,436,000 to Chevre in part repayment of the prior advances to Gills Creek. Chevre, in turn, remitted these funds and assigned its rights to the escrow to its sole stockholder, Union Street, in exchange for Union Street's forgiveness of the remaining indebtedness due it.

12. In January 1995, Union Street intervened in the state court action and cross claimed against ABB, alleging that by virtue of certain promissory notes, UCC filings, and security agreements respecting the advances, it had a perfected security interest in the proceeds of the apartment sales contract as "General Intangibles." Union Street moved for summary judgment, and that motion was briefed, argued and taken under advisement by the state court judge.

13. On August 11, 1995, ABB filed an Involuntary Chapter 7 Bankruptcy Petition against Gills Creek pursuant to 11 U.S.C. § 303(b)(2).[2] The Petition claims an indebtedness due ABB by Gills Creek in the amount of $350,000.

14. By Order entered October 2, 1995 (hereinafter "Relief Order"), this Court granted Gills Creek's request for relief from the automatic stay of § 362(a), with the consent of ABB, to allow the continued prosecution of the pending state court litigation.

### CONCLUSIONS OF LAW

■ Section 303(b) provides that:

(b) an involuntary case against a person is commenced by the filing with the Bankruptcy Court of a Petition under Chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute, or an indenture trust-

ee representing such a holder, if such claims aggregate at least $10,000 more than the value of any lien on the property of the Debtor securing such claims held by the holders of such claims;

(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549 or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $10,000 of such claims;

■ The parties do not contest that there are fewer than 12 creditors of the Alleged Debtor and therefore pursuant to § 303(b)(2), the involuntary petition may be filed by a single creditor of the Alleged Debtor, in this instance, ABB. However, ABB must demonstrate that it holds a claim that conforms to the requirements of § 303(b). Pursuant to this section, certain types of claims are excluded from consideration; i.e. "(a) claims contingent as to liability, (b) claims subject to a bona fide dispute, (c) claims of employees of the debtor, (d) claims of insiders of the debtor, (e) claims of recipients of transfers voidable under 11 U.S.C. §§ 544, 545 (statutory liens), 547 (preferences), 548 (fraudulent transfers), 549 (postpetition transfers), or 724(a) (penalty claims)." *Atlas Mach. & Iron Works v. Bethlehem Steel,* 986 F.2d 709, 715 (4th Cir. 1993). In the instant case, the applicable inquiry for this Court therefore is whether or not the claim of the petitioning creditor is contingent as to liability or the subject of a bona fide dispute.

■ A claim is contingent as to liability within the meaning of § 303 if

"... the debt is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor and if such triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to the

2. Further references to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.,* shall be by section number only.

claim occurred." *In re All Media Properties, Inc.,* 5 B.R. 126, 133 (Bankr.S.D.Tex. 1980).

*In re Galaxy Boat Manufacturing Co., Inc.,* 72 B.R. 200, 202–203 (Bankr.D.S.C.1986). Based upon this definition, it does not appear to the Court that the petitioning creditor's claim is contingent as to liability.

■ The Court must next consider whether the claim of the petitioning creditor is the subject of a bona fide dispute. In *Atlas Machine & Iron Works v. Bethlehem Steel,* 986 F.2d 709, 715 (4th Cir.1993), the Fourth Circuit stated that "[a]lthough the courts have not agreed on a precise definition of bona fide dispute, it clearly entails some sort of meritorious, existing conflict." The Fourth Circuit also stated that the burden of proof with respect to § 303(b) issues, specifically including the burden on the issue of a bona fide dispute, rested with the petitioning creditor. *Atlas Machine,* 986 F.2d at 715. See also *In re Knoth,* 168 B.R. 311, 312 (Bankr.D.S.C.1994) ("the petitioning creditors have the burden of proving by a preponderance of evidence that the statutory requirements of § 303 have been met").

The courts of appeals confronting the issue of the meaning of the term "bona fide dispute" generally follow the rule first set forth in *In re Lough,* 57 B.R. 993 (E.D.Mich.1986).[3] The *Lough* definition of "a bona fide dispute" is simple and straightforward; "if there is a bona fide dispute as to either the law or the facts, then the creditor does not qualify and the petition must be dismissed." *Lough,* at 997. *Lough* reached this conclusion on the basis of the legislative history of the 1984 "not the subject of a bona fide dispute" amendment that demonstrated a concern that the threat of involuntary bankruptcy not be used by creditors to force debtors to pay disputed claims.

The legislative history makes it clear that Congress intended to disqualify a creditor whenever there is a legitimate basis for the debtor not paying the debt, whether that basis is factual or legal. Congress plainly did not intend to require a debtor to pay a legitimately disputed debt simply to avoid the stigma of bankruptcy. *Accordingly, if there is either a genuine issue of material fact that bears upon the debtor's liability or a meritorious contention as to the application of law to the undisputed facts, then the petition must be dismissed.*

*Lough,* at 997 (emphasis added).

The record before this Court reveals both a "genuine issue of material fact" and "a meritorious contention as to the applicable law."

In the pending state court action, ABB moved for summary judgment on the ground that there was "no genuine issue of material fact as to the Defendant's liability in this action." In denying the motion, the state court found that "Plaintiff has not carried its burden of proving that no issue of material fact remains in dispute as to its claim or Defendant's affirmative defenses." While this Court is aware of the favorable inferences and standards of proof used by the state court in ruling on a motion pursuant to Rule 56 of the South Carolina Rules of Civil Procedure, and that the state court's opinion is not binding on this Court, the express language of the state court's order along with the fact that its ruling was entered approximately three (3) months after the attachment was ordered indicating additional and separate consideration of the Summary Judgment Motion, does persuade this Court that there remains some genuine issue of material fact as to liability in the state court litigation. Furthermore, it is apparent that considerable additional testimony and other evidence need

---

3. *See In re Rimell,* 946 F.2d 1363, 1365 (8th Cir.1991) cert. denied 504 U.S. 941, 112 S.Ct. 2275, 119 L.Ed.2d 202 (1992); *B.D.W. Assoc. v. Busy Beaver Bldg. Ctrs.,* 865 F.2d 65, 66 (3rd Cir.1989); *Bartmann v. Maverick Tube Corp.,* 853 F.2d 1540, 1543 (10th Cir.1988); *Matter of Busick,* 831 F.2d 745, 749 (7th Cir.1987); *In re Sims,* 994 F.2d 210, 220 (5th Cir.1993), cert. denied —— U.S. ——, 114 S.Ct. 702, 126 L.Ed.2d

669 (1994). *See also In re Caucus Distributors, Inc.,* 106 B.R. 890, 917 (Bkrtcy.E.D.Va.1989); *In re Fox,* 162 B.R. 729 (Bkrtcy.E.D.Va.1994). Apart from the *Fox* and *Sims* opinions which were decided after *Atlas Machine,* these are the same decisions that the Fourth Circuit referenced as standing for the proposition that a bona fide dispute entails some sort of meritorious, existing conflict.

to be presented in order to clearly determine the issue of liability.

This Court also finds that ABB has not established that a lack of a meritorious contention of applicable law exists as to the ABB claim. The promissory notes on which ABB bases its claim were executed for Gills Creek by its general partner, Hampton Greene Corp., on January 4, 1989; however, neither Hampton Greene nor Gills Creek were in existence on that date, the former having been organized on January 6, 1989 and the latter created on January 9, 1989. The enforceability of promissory notes executed by a non-existent entity is certainly debatable as a matter of law. On their face, these facts demonstrate a meritorious conflict as to whether a legal obligation was created on the part of Gills Creek. While this Court may make some review of the facts and law in order to sufficiently determine if a bona fide dispute exists, it is not contemplated that this Court will delve into the dispute so as to be in a position to decide it. Therefore, applying the standard for burden of proof set forth in *Atlas Machine,* this Court finds that ABB has not met its burden of proof.[4]

■ Gills Creek has also requested that the Court award attorney's fees, costs, actual and punitive damages pursuant to § 303(i), which provides:

> If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
>
> (1) against the petitioners and in favor of the debtor for—
>
> (A) costs; or
>
> (B) a reasonable attorney's fee; or
>
> (2) against any petitioner that filed the petition in bad faith, for—
>
> (A) any damages proximately caused by such filing; or
>
> (B) punitive damages.

The award of attorneys' fees and costs is not automatic but falls within the sound discretion of the trial court. *In re Reid,* 854 F.2d 156 (7th Cir.1988). As Judge Tice from the Eastern District of Virginia stated:

> Thus, a bankruptcy court is left to its own discretion as to whether costs and attorney fees should be awarded pursuant to § 303(i)(1), and the result is properly determined by a totality of circumstances test. *In re Ross,* 135 B.R. 230, 237–39 (Bankr.E.D.Pa.1991).

*In re Fox,* 171 B.R. 31 (Bkrtcy.E.D.Va.1994). Based upon the totality of the circumstances surrounding the events leading up to and including the filing of the within involuntary petition, it appears to the Court that an award of costs and attorney's fees is not warranted. Additionally, the bad faith required for the impositions of actual and/or punitive damages is also deficient and therefore that request by the Alleged Debtor must similarly be denied.

## CONCLUSION

■ It appears that the primary objective of the filing of the involuntary petition at this time against Gill's Creek, a partnership which no longer conducts business or has assets and against which there is pending significant state court litigation, is to preserve a remedy to collect a possible preferential transfer pursuant to § 547. The filing of an involuntary bankruptcy petition is generally considered to be a drastic remedy and this Court questions whether the involuntary bankruptcy statute was intended to be invoked chiefly to utilize the bankruptcy code's avoidance powers. In this Court's view, that is one of the reasons the statute sets such specific requirements before a creditor has standing to file an involuntary petition.

Additionally, it appears that there are other avenues for ABB to ensure that its rights would not be prejudiced if it receives a favorable judgment in the on-going state court litigation. Initially, in the state court litigation with the Debtor and Chevre, the state court ordered the escrow of funds in an amount the state court felt would protect the parties' interest and in an amount in excess of the face amount of the promissory notes.

---

4. Because the Court has concluded that there remains a bona fide dispute as to the claim of the sole petitioning creditor, the Court need not address the other defenses raised by Gills Creek.

If ABB is successful in the state court litigation, there are state law remedies, including the South Carolina Anti–Assignment Statute codified at S.C.Code Ann. § 27–25–10 (Law. Co-op.1976), that may be available to satisfy any favorable judgment above the amount held in escrow. There may also be federal remedies available to ABB including the filing of a subsequent involuntary bankruptcy petition against Gill's Creek.

 Finally, § 305(a) states that "[t]he court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—(1) the interests of creditors and the debtor would be better served by such dismissal or suspension; or (2)(A) there is pending a foreign proceeding ..." It appears to this Court that for the reasons stated, abstention by this Court would also be appropriate.

For all of the reasons stated, ABB has failed to meet its burden to sustain the involuntary petition. It is therefore

**ORDERED,** that the motion to dismiss the involuntary petition is granted. It is further

**ORDERED,** that the Alleged Debtor's request for Attorneys' Fees, Costs and Actual and Punitive Damages is denied.

**AND IT IS SO ORDERED.**