**In re E.S. PROFESSIONAL SERVICES, INC., Debtor.**

**No. 05–23206–BKC–RBR.**

United States Bankruptcy Court, S.D. Florida.

Oct. 20, 2005.

---

Carlos L. de Zayas, Lydecker & Wadsworth, LLC, Miami, FL, for Debtor.

Brian S. Behar, Behar, Gutt & Glazer, P.A., Aventura, FL, for Petitioning Creditor DHL Aero Expresso, S.A.

*ORDER DISMISSING INVOLUNTARY PETITION*

THOMAS S. UTSCHIG, Bankruptcy Judge.

This Court conducted the trial on the involuntary petition in this case on September 22, 2005.[1] The facts reflect that

---

1. At the time of the trial, the petitioning creditor requested that the matter be adjourned because of concerns that the alleged debtor had engaged in "spoilation" of the evidence. The Court considered the testimony of the witnesses in that regard and concluded that while there may have been questions as to whether or not two parties named by the alleged debtor as creditors actually held any claims against the debtor, the evidence was insufficient to further delay these proceedings. As such, the Court denied the creditor's emergency motion and proceeded with the trial.

this involuntary case is essentially a two-party dispute. There is only one petitioning creditor, DHL Aero Expresso, S.A., a Panamanian cargo carrier which chartered an airplane for use by the alleged debtor. DHL claims that it is owed approximately $400,000 by the alleged debtor, which it contends has fewer than 12 creditors for purposes of 11 U.S.C. § 303(b)(2). During the trial, the petitioning creditor indicated that its claim constituted the substantial bulk of the claims against the alleged debtor's estate. The alleged debtor does not dispute that DHL holds a sizeable claim; it does contend that it has more than 12 creditors, that it is generally paying its debts as they come due, and that the petitioning creditor has filed this case in bad faith.

Before filing the involuntary petition in this case, the creditor had previously sued the debtor in state court in an effort to collect this account. The debtor filed a counterclaim against the creditor alleging tortious interference with business relationship, unfair and deceptive trade practices, and setoff. In the testimony before this Court, the debtor's representative indicated he believed his company owed a significant portion of the outstanding balance, but that the creditor was attempting to put the debtor out of business. According to the debtor's representative, the debtor was a former customer of the creditor who had become something of a competitor, and the creditor was prepared to go to whatever lengths necessary to prevent that from happening.

■ Under Section 303(b)(2), a single creditor holding a claim in excess of $12,300 which is not "contingent as to liability or the subject of a bona fide dispute" may file an involuntary petition against a debtor. If the alleged debtor contests the entry of the petition, the court is to order relief only if "the debtor is generally not paying such debtor's debts as such debts come due." 11 U.S.C. § 303(h)(1). As framed at the trial, the issues before the Court are as follows. First of all, the Court must determine whether the debtor has more than 12 creditors. Second, the Court must determine whether the debtor is "generally not paying [its] debts as such debts come due." And third, the Court must determine whether the creditor has filed the involuntary petition in this case in good faith, or whether, as the debtor contends, the creditor has misused the bankruptcy code in furtherance of its efforts to eliminate a competitor.

The debtor contests the entry of an order for relief under Section 303(b), and contends that it has more than 12 creditors and is generally paying its debts as they come due. The debtor filed a list of creditors in accordance with Fed. R. Bankr.P. 1003(b) and named 15 creditors. At the trial, there was testimony by two named creditors which indicated that neither of them had a claim against the debtor.[2] Even discounting these two creditors, the debtor's list still contains the names of 13 creditors. The debtor offered the testimony of a number of other creditors to demonstrate that it had resolved issues with those creditors and that none of them wished to see the debtor put into bankruptcy.

---

**2.** The petitioning creditor contended that this testimony indicated that the debtor was engaged in "spoilage" of the evidence. However, one of the witnesses was not primarily responsible for the bookkeeping of his company, and the other could not be certain that his company had never done any work for the debtor, just that they did not have an open account with the debtor. Discounting both prospective creditors, however, still leaves a total of 13. The others who testified clearly indicated that they had claims against the debtor for various goods and services.

The testifying creditors indicated that the debtor had worked out repayment of their claims. The petitioning creditor complains that this indicates that the debtor is not, in fact, "generally" paying its debts as they come due, in that it was only after the debts became delinquent that the debtor resolved repayment terms to the satisfaction of the creditors in question. However, the petitioning creditor is still faced with the initial threshold inquiry of whether the involuntary petition was properly filed given the number of creditors listed by the debtor.

Involuntary bankruptcy petitions are often problematic and fraught with difficulties. The debtors are often defunct corporations with little incentive to perform their statutory duties—for example, the obligation to prepare schedules of their assets and liabilities. Creditors occasionally assume that a bankruptcy trustee might pursue avoidance actions in the context of an involuntary bankruptcy, but in the absence of other assets in the estate many trustees are reluctant to engage in speculative litigation that may not benefit the estate. Often, such cases simply linger without conclusion or a satisfactory result for anyone, be it the debtor or creditors.[3] Problems persist even in those cases in which the debtor is still a viable entity, albeit with one further caveat—the court must be even more cautious in determining whether to enter an order for relief against such a debtor given the significant risk of economic harm to the debtor's business.

■ As counsel for the petitioning creditor noted during argument, a creditor clearly has the right to file an involuntary petition. The creditor does not, however, have the automatic right to the entry of the order for relief. In the case of *Fed. Fin. Co. v. DeKaron Corp.*, 261 B.R. 61 (S.D.Fla.2001), the court considered whether an involuntary petition could be filed by a sole creditor who had not been paid on its claim. While holding that such a petition was not fatally defective, the court stated, "This does not mean that a single/sole creditor will be able to automatically establish entitlement to relief in each and every case simply by proving that the debt owed to it has not been paid." *Id.* at 64–65. If that is true in a case involving only one creditor, it must be even more true in a case where other creditors may be harmed, and in which the debtor seeks to handle its business affairs outside of the bankruptcy forum.

■ In the present case, the debtor appears to have more than 12 creditors and appears to be paying those creditors' claims in a satisfactory manner. Admittedly, the debtor may have entered into arrangements with the other creditors after initially defaulting on the debts. And there is still a relatively small dispute as to whether the debtor has more than 12 creditors.[4] Given that it is the petitioning

---

3. Indeed, this Court has seen cases in which the dispute over whether it is appropriate to enter the order for relief has itself dragged on for a year or more.

4. As to this issue, the debtor timely filed an objection to the involuntary petition and provided a list of creditors. The list was supplied to the petitioning creditor. The petitioning creditor requested documents from the debtor, and while there is a dispute as to the timeliness of the delivery of the documents, it appears the petitioning creditor had sufficient notice and opportunity to depose all of the listed creditors if it so chose well in advance of the trial. It is the creditor's burden to demonstrate that the alleged debtor has fewer than 12 creditors, and the petitioning creditor in this case has failed to do so. *See generally In re Smith*, 243 B.R. 169, 189 (Bankr. N.D.Ga.1999) ("In summary, [the petitioning creditor] had the burden at trial to prove that [the alleged debtor] had less than twelve qualifying creditors").

creditor's burden to demonstrate it is entitled to seek the entry of an order for relief, however, the creditor has failed to adequately demonstrate that the debtor has fewer than 12 creditors.

In addition, the Court must consider whether the petitioning creditor is proceeding in good faith. The debtor argues that the state court litigation presently pending between the parties provides the creditor with the appropriate forum to litigate the parties' competing claims. The debtor also notes that the other creditors are opposed to the entry of an order for relief in this case, and would prefer to see the involuntary petition dismissed.

The petitioning creditor has indicated that it filed the involuntary petition in this case because it had heard that the debtor's principal was in the midst of a divorce, and because it was concerned about the possibility of certain vague and unspecified transfers of property which might have been preferential. As the court noted in *In re Gills Creek Parkway Assocs., L.P.*, 194 B.R. 59, 64 (Bankr.D.S.C.1995), it is questionable whether "the involuntary bankruptcy statute was intended to be invoked chiefly to utilize the bankruptcy code's avoidance powers."

■ Indeed, the filing of an involuntary petition is an "extreme remedy" with "serious consequences" to an alleged debtor. *In re Smith*, 243 B.R. 169 (Bankr.N.D.Ga. 1999). A debtor hauled into bankruptcy court involuntarily risks the loss of credit, the inability to transfer assets in the normal course of business, as well as public embarrassment, and is often rendered incapable of conducting its business affairs. As such, courts have an obligation to carefully scrutinize the actions of a petitioning creditor in order to assure that an order for relief is only entered in such cases where it is truly appropriate. *Id.* at 174.

Based on the testimony, it does not appear that the debtor has any significant assets, or that any sizeable assets have been transferred to third parties by the debtor. It seems highly unlikely that there would be any meaningful administration in a chapter 7 case. In the case of *In re Systems Communs., Inc.*, 234 B.R. 145 (Bankr.M.D.Fla.1999), the court considered it important that "[i]f an order for relief is entered and [the debtor's] assets are liquidated in [a] Chapter 7 case, no one will receive a meaningful return on their claims." *Id.* at 148.

Much like the debtor in the *Systems Communs.* case, the alleged debtor here appears to have "no saleable hard assets" and its intangible assets "are not convertible to actual cash." *Id.* From the vantage point of the other creditors in this case, it is clear that they believe the only likely way they will be repaid is if the debtor stays operational; their claims will go unpaid if the Court enters an order for relief. While the Court is reluctant to presume the petitioning creditor has proceeded in bad faith, it appears that there is very little advantage to filing this involuntary bankruptcy save for precisely the reason suggested by the debtor: namely, to gain competitive advantage and to effectively shut down the debtor's business operations.

■ The goal or purpose of an involuntary bankruptcy should be the equal distribution of assets among creditors. *Smith*, 243 B.R. at 174. In the case of *In re Brooklyn Resource Recovery*, 216 B.R. 470, 486 (Bankr.E.D.N.Y.1997), the court stated:

> Involuntary bankruptcy is an extreme remedy with dire consequences upon a business enterprise. Such a remedy exists as an avenue of relief for the benefit of the overall creditor body of troubled businesses. Involuntary bankruptcy

was not intended to redress the special grievances, no matter how legitimate, of particular creditors of a business otherwise holding its own.... Petitioning Creditors must seek redress under state law, in the state courts and not in the bankruptcy court.

When determining whether a petitioning creditor has proven that a debtor is not generally paying its debts when they come due, for example, the court should "examine the totality of the circumstances, balancing the interests of the [alleged] debtor with those of the creditors." *Id.* at 485. Here, despite the petitioning creditor's vague assertion of possible preferential transfers, there seems to be very little benefit to creditors as a whole from the entry of an order for relief. Again, it is the Court's obligation to balance the very real prospect of devastating economic harm to the alleged debtor against the interests of the creditor body as a whole.

In this regard, it is important to note that the petitioning creditor already has a forum available to it—namely, the state court lawsuit it filed against the debtor. In *Systems Communs.*, the court dismissed an involuntary petition, saying:

> The Petitioning Creditors elected to proceed against the Debtor in a forum in Utah and the lawsuit is still pending. Thus, the Petitioning Creditors *have an appropriate forum in which to litigate their claim.* [Emphasis added].

*Id.* at 148. Similarly, the court in *Gills Creek Parkway* noted that there were "other avenues" for the petitioning creditor in that case to "ensure that its rights would not be prejudiced." 194 B.R. at 64. In that case, those other remedies were primarily related to pending state court litigation between the parties, and the court specifically rejected the idea that the mere possibility of preferential transfers was sufficient to invoke the "drastic reme-

dy" of involuntary bankruptcy proceedings. *Id.*

In short, it appears that the alleged debtor has more than 12 creditors and, as such, this involuntary bankruptcy petition is fatally defective under 11 U.S.C. § 303. While a debtor's payment arrangements with creditors to extend the time to repay obligations can constitute evidence of a debtor's failure to pay debts as they come due, in the present case it is unnecessary to reach that issue because the petitioning creditor has not demonstrated compliance with the threshold inquiry of the statute. Even were it relevant, the Court finds that under the totality of the circumstances, there is no basis for entering an order for relief in this case. The creditor body as a whole would not benefit, and the majority of other creditors (if not all other creditors) do not wish to see the debtor placed into an involuntary bankruptcy. The petitioning creditor has sufficient remedies in state court and there is no basis for overcoming the general presumption that the bankruptcy courts should avoid taking jurisdiction over two-party disputes. *See In re Axl Industries, Inc.,* 127 B.R. 482, 484 (S.D.Fla.1991).

■ There is a presumption that a creditor who files an involuntary petition acted in "good faith." *Smith,* 243 B.R. at 194. To overcome that presumption, the debtor must prove by a preponderance of the evidence that the case was filed in bad faith. *Id.* Under 11 U.S.C. § 303(i), the Court may grant judgment against a petitioning creditor and in favor of the debtor for costs and attorneys' fees; if the Court finds that the petition was filed in bad faith, there may also be a judgment for any damages "proximately caused by such filing" as well as punitive damages. In the present case, the alleged debtor reserved its rights under Section 303(i), and the Court concludes it is appropriate to consid-

er an award of fees and costs against the petitioning creditor.

Accordingly,

IT IS ORDERED that the involuntary petition is dismissed. The alleged debtor may submit a request for costs and fees in accordance with 11 U.S.C. § 303(i).