**In re BASIL STREET PARTNERS,
LLC, Alleged Debtor.**

No. 9:11–bk–19510–JPH.

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

Jan. 29, 2012.

See also 2012 WL 3962849.

Joshua B. Alper, Roetzel & Andres L.P.A., Ft. Lauderdale, FL, Leyza F. Blanco, GrayRobinson, Miami, FL, for Debtor.

## MEMORANDUM ORDER DENYING ALLEGED DEBTOR'S MOTION TO DISMISS OR ALTERNATIVELY TO ABSTAIN

JEFFERY P. HOPKINS, Bankruptcy Judge.

Petitioning creditors Antaramian Properties, LLC ("APL"), Young Van Assenderp, P.A. ("YVA"), Turrell, Hall & Associates, Inc. ("THA"), and Forge Engineering, Inc. ("Forge") (collectively, the "Petitioning Creditors") filed an involuntary petition under chapter 7 ("Petition") against the Alleged Debtor, Basil Street Partners, LLC ("Basil Street") on October 19, 2011 (Doc. 1). On December 13, 2011[1] Basil Street filed a motion to dismiss the involuntary petition, or, alternatively, to have the Court abstain from taking jurisdiction over this case (Doc. 88).

The Court set Basil Street's motion for hearing on January 18, 2012. At the hearing, the Court heard argument of counsel for Basil Street, as well as counsel for all of the Petitioning Creditors. The Court also considered the responses filed by certain of the Petitioning Creditors in response to Basil Street's motion to dismiss (Doc. 99, 100). In sum, Basil Street argues that the Petitioning Creditors have filed the Petition in bad faith, and that the Petition should, therefore, be dismissed. Specifically, Basil Street contends that the Petitioning Creditors have filed the Petition solely to collect a debt, which, according to Basil Street, constitutes an improper purpose for filing an involuntary petition against an alleged debtor.

The Court ruled at the January 18, 2012 hearing that it did not find the Petition to have been filed in bad faith or for an improper purpose. Accordingly, the Court denied Basil Street's motion to dismiss. The Court also declined Basil Street's invitation to abstain from hearing this bankruptcy case. After additional consideration of Basil Street's motion to dismiss, the Court further finds (although this rationale was not expressed on the record at the January 18, 2012 hearing) that Basil Street's motion to dismiss is also due to be denied because it prematurely raises the issue of bad faith.

In sum, the Court holds that the issue of bad faith on the part of petitioning creditors is not appropriately before a bankruptcy court for consideration until such time as the involuntary petition is actually dismissed—whether that be on a motion to dismiss or a motion for summary judgment or after a trial has been conducted as provided under 11 U.S.C. § 303(h). Moreover, even if a bad faith inquiry is warranted at this stage of the case, the Court finds, consistent with its ruling at the hearing, that there is no basis on the record before the Court to conclude that the Petitioning Creditors filed the Petition against Basil Street in bad faith. Accord-

---

1. Basil Street was served with the involuntary petition on November 1, 2011. (Doc. 67). Accordingly, under Rule 1011 of the Federal Rules of Bankruptcy Procedure, defenses or objections to the involuntary petition were due within 21 days, or November 22, 2011. On November 11, 2011, Basil Street filed a motion to extend the time to respond to the involuntary petition (Doc. 68), and also filed a follow-up motion to extend on November 22, 2011 (Doc. 76). The Court entered an Order granting Basil Street's motion to extend (Doc. 86), in which the Court gave Basil Street until December 13, 2011 to file a response to the involuntary petition. Basil Street complied with that deadline by filing its motion to dismiss (Doc. 88). Therefore, the Court finds that the motion to dismiss was timely filed and was properly before the Court for hearing on January 18, 2012.

ingly, the Court's ruling from the January 18, 2012 hearing will remain effective. The Court now offers this memorandum order as a more thorough explanation of its reasoning.

### Legal Analysis

#### 1. The Framework of 11 U.S.C. § 303

Section 303 of the bankruptcy Code governs involuntary cases. Section 303(a) establishes who may be the subject of an involuntary petition. Section 303(b) contains the numerosity and claims requirements for petitioning creditors to be able to file an involuntary petition against an alleged debtor. For example, if a debtor has twelve or more creditors, then at least three petitioning creditors are required to commence an involuntary case against the debtor. Each of those three petitioning creditors must hold a claim that is "not contingent as to liability or the subject of a bona fide dispute as to liability or amount." Additionally, the aggregate of such claims must equal at least $14,425 more than the value of any lien on property of the debtor securing such claims. *See* 11 U.S.C. § 303(b)(1). Alternatively, if a debtor has fewer than twelve creditors who hold such noncontingent, undisputed claims, then only a single creditor is needed to commence an involuntary petition, provided that such a creditor holds a noncontingent, undisputed claim of at least $14,425. *See* 11 U.S.C. § 303(b)(2).

 Nowhere in the eligibility requirements of § 303(b) is there any reference to the motivation of the petitioning creditor(s), or any requirement that the petitioning creditor(s) demonstrate either good faith or the absence of bad faith in filing the petition. In fact, the law presumes good faith on the part of the petitioning creditors. *See In re Ransome Group Investors I, LP*, 423 B.R. 556, 559 (Bankr.M.D.Fla.2009) (Glenn, J.); *In re E.S. Professional Services, Inc.*, 335 B.R. 221, 226 (Bankr.S.D.Fla.2005). Rather,

the only mention of bad faith in § 303 is contained in § 303(i)(2), which governs the assessment of damages against any petitioner who filed the petition in bad faith. However, it is clear from a plain reading of the statute that § 303(i) is triggered only after the court has dismissed the petition. In other words, dismissal of the petition is a prerequisite to a bad faith inquiry and analysis. The concept of bad faith has no bearing on a bankruptcy court's determination of *whether* to dismiss the petition in the first place. *See General Trading, Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1505 (11th Cir.1997) (noting that "if the petition was not dismissed, [petitioning creditor] could not under the Bankruptcy Code have been subject to the bad faith inquiry").

Several bankruptcy courts also adhere to this approach, analyzing bad faith only after the involuntary petition has been dismissed. *See, e.g., In re Antonini*, 2012 WL 112978, *7–8 (Bankr.S.D.Fla. Jan. 12, 2012) (analyzing claim of bad faith for purposes of awarding damages only after noting that involuntary petition had been previously dismissed by the court); *In re Dade Foreign Trade Zoe, Inc.*, 1999 WL 33592884, *2 (Bankr.S.D.Fla. Apr. 19, 1999) (conducting a hearing on the creditor's bad faith for purposes of awarding damages only after case had been dismissed); *In re Kearney*, 121 B.R. 642, 643 (Bankr.M.D.Fla.1990) (Paskay, J.) (addressing bad faith in the context of awarding damages only after dismissing the involuntary petition).

Moreover, many of the cases cited by Basil Street in its motion to dismiss do not lend support to an interpretation of § 303 that would require the Court to engage in a bad faith analysis prior to dismissing the case. *See In re Dino's, Inc.*, 183 B.R. 779 (S.D.Ohio 1995) (discussing bad faith only in the context of § 303(c) joinder of additional creditors where involuntary petition

would otherwise be subject to dismissal for initial petitioning creditor's failure to satisfy numerosity requirement of § 303(b)); [2] *In re LaRoche*, 131 B.R. 253 (D.R.I.1991) (same); *In re Smith*, 243 B.R. 169 (Bankr. N.D.Ga.1999) (analyzing petitioning creditor's alleged bad faith for purposes of assessing damages under § 303(i) only after court had previously dismissed the petition); *Matter of Elsub Corp.*, 66 B.R. 189 (Bankr.D.N.J.1986) (addressing bad faith of single-filing petitioning creditor only after court made previous ruling that involuntary petition could not be maintained as filed because alleged debtor had more than 12 creditors).

While the Court acknowledges that bankruptcy courts in other jurisdictions appear to require that involuntary petitions be filed in good faith, [3] the Eleventh Circuit has not imposed such a requirement. Indeed, this Court finds such a requirement contrary to the express, unambiguous language of § 303(i). In light of the Eleventh Circuit's statement in *General Trading, Inc. v. Yale Materials Handling Corp.* that petitioning creditors are not subject to a bad faith inquiry unless

the petition has been dismissed, the Court will not apply a contrary judicial gloss to the statute. Thus, to the extent that other bankruptcy courts have engaged in a bad faith analysis prior to dismissing the involuntary petition, this Court will not follow their lead. [4]

Rather, the Court concludes that the only relevant inquiries for purposes of dismissing a petition on a motion to dismiss are whether the alleged debtor is a proper person against whom an involuntary petition under § 303(a) can be commenced, and whether the petitioning creditors have facially satisfied the requirements of § 303(b). *See, e.g., In re Kearney*, 121 B.R. at 643 (discussing the dismissal of an involuntary petition where the petitioning creditor did not hold a valid claim against the debtor due to the fact that the judgment which formed the basis of the creditor's claim was issued in favor of a different entity and not the creditor itself). A petition may also be "dismissed"—after trial—if evidence is required to prove that the petitioning creditors have failed to satisfy the requirements of § 303(b), [5] or if one of the

---

**2.** This situation is not implicated by the instant motion to dismiss because Basil Street has elected not to challenge the nature of the claims of the initial Petitioning Creditors under § 303(b). Accordingly, there is currently no issue before the Court as to whether any of the Petitioning Creditors should be disqualified, and whether any substitute creditors would be needed to maintain the Petition. Only if additional creditors were needed under § 303(c) would this line of cases—and the corresponding good faith inquiry—potentially be implicated.

**3.** *See, e.g., In re Tichy Elec. Co. Inc.*, 332 B.R. 364, 373 (Bankr.N.D.Iowa 2005).

**4.** At the January 18, 2012 hearing, the Court indicated that its ruling was premised primarily on its reading of *In re Key Auto Liquidation Center, Inc.*, 372 B.R. 74 (Bankr.N.D.Fla. 2007) (Killian, J.). While the court in *Key*

*Auto* did engage in a bad faith inquiry in resolving a motion for summary judgment filed by the petitioning creditors, it appears to have done so as an indulgence to the alleged debtor, and only after the court had already determined that the other statutory requirements were satisfied. Indeed, in the court's final paragraph, the court tracks only the requirements of § 303(b) and (h) and says nothing about bad faith. *Id.* at 80. To the extent that *Key Auto* can be read as requiring a bad faith inquiry prior to dismissal, this Court disagrees that such a requirement exists. Nevertheless, this Court does find instructive, as discussed in the following section of this memorandum order, the substantive bad faith analysis rendered in *Key Auto*.

**5.** *See, e.g., In re E.S. Professional Services, Inc.*, 335 B.R. 221, 226 (Bankr.S.D.Fla.2005) (dismissing involuntary petition as "fatally defective" where single petitioning creditor filed

requirements of § 303(h) is not met (in which case the court would not be able to enter the order for relief and would have to "dismiss" the petition).

■ In sum, a petitioning creditor's good or bad faith in filing an involuntary petition is not a basis for dismissal. If the statutory requirements for filing the petition are satisfied, then the petitioning creditors' motivations for filing the petition are not subject to judicial scrutiny, as the petitioning creditors will be deemed to have filed the petition *per se* in good faith. Thus, if an alleged debtor under an involuntary petition seeks to controvert the petition and have it dismissed, it must either (i) establish that the alleged debtor is ineligible for relief under chapter 7 or chapter 11, because, for example, the person is a family farmer or is not a moneyed business; or (ii) attack the nature of the petitioning creditors' claims as being contingent or the subject of a bona fide dispute as to liability or amount; or (iii) dispute the allegation that it is not generally paying its debts as they become due. *See* 11 U.S.C. § 303(a), (b), (h).

### 2. *Basil Street's Motion to Dismiss*

■ In the motion, it has not been alleged that Basil Street fails to meet the requirements for eligibility under § 303(a). Nor has Basil Street challenged the Petitioning Creditors' claims as being contingent as to liability or the subject of a bona fide dispute under § 303(b), or asserted that Basil Street is generally paying its debts as they become due under § 303(h)(1). Rather, the sole argument advanced in the motion to dismiss is that the Petition was filed in bad faith.[6] Given the Court's interpretation of the framework of § 303, as outlined above, the Court need not determine at this juncture whether the Petitioning Creditors filed the Petition in bad faith. However, even if bad faith were relevant to the Court's analysis, the Court finds, as it explained at the hearing and as discussed below, that the current record does not permit a finding of bad faith on the part of the Petitioning Creditors.

■ While styled as a motion to dismiss,[7] which would require the Court to accept all factual allegations as true and to construe the Petition in the light most favorable to the Petitioning Creditors, it is clear from Basil Street's motion (together with its accompanying citations to deposition transcripts and testimony of the principals of the Petitioning Creditors) that Basil Street intended for the Court to look beyond the four corners of the Petition and to treat the motion instead as one for summary judgment. The Court may treat a motion to dismiss as a motion for summary judgment. Fed.R.Civ.P. 12(d). Of course, a different legal standard applies

petition but debtor had more than twelve creditors); *In re Global Waste Co.*, 207 B.R. 542 (Bankr.N.D.Ohio 1997) (dismissing involuntary petition where insufficient number of petitioning creditors filed involuntary petition against alleged debtor).

6. The Court acknowledges Basil Street's assertion that "some or all of the Petitioning Creditors' claims are the subject of bona-fide disputes as to liability and/or amount." Doc. 88, ¶ 4. However, that assertion was made presumably for the sole purpose of preserving its right to challenge the Petitioning Creditors' claims if necessary, and was not the subject of the motion to dismiss. Indeed, Basil Street admits that its motion to dismiss concerns only the Petitioning Creditors' bad faith. *See id.* As discussed above, the Court finds that the bad faith issue is premature. However, Basil Street may pursue its challenge to the nature of the Petitioning Creditors' claims, as being the subject of bona fide dispute, at trial.

7. Although a specific basis was not cited, the motion to dismiss was presumably brought under Rule 12(b)(6), made applicable to contested matters through Rule 1018 and 7012 of the Federal Rules of Bankruptcy Procedure.

to such a motion, with the burden resting on Basil Street, as the movant, to demonstrate that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56 (applicable to a contested involuntary petition through Rules 1018 and 7056 of the Federal Rules of Bankruptcy Procedure).

Assuming, *arguendo,* that the Court were inclined to analyze the alleged bad faith of the Petitioning Creditors at this stage of the case, Basil Street would, under the foregoing legal standard, be required to establish that there are no genuine issues as to any material facts concerning the bad faith of the Petitioning Creditors in filing the Petition. This is no small feat, considering that issues of fact almost invariably exist when a party's intent is called into question. *See Slavin v. Curry,* 574 F.2d 1256, 1267 (5th Cir.1978) ("Cases in which the underlying issue is one of motivation, intent, or some other subjective fact are particularly inappropriate for summary judgment.").

The term "bad faith" is not defined in the Bankruptcy Code. Thus, absent admissions of bad faith, which, of course, were not forthcoming from the Petitioning Creditors, courts have analyzed the concept of bad faith in the context of filing an involuntary petition under various tests. The Eleventh Circuit has specifically referenced three such tests, although it has not adopted or endorsed one to the exclusion of the others. *See General Trading Inc. v. Yale Materials Handling Corp.,* 119 F.3d at 1501–02.

■ These tests include: (i) the "improper purpose" test, under which bad faith exists if the petitioning creditors were motivated to file the petition out of ill will or malice, or in order to harass or embarrass the debtor; (ii) the "improper use" test, under which bad faith exists if it is demonstrated that the petitioning creditors were motivated by an improper bankruptcy purpose (e.g., using the bankruptcy court as a substitute for customary collection procedures) in filing the petition; and (iii) the "Rule 9011" test, which requires both an objective and subjective evaluation of the petitioning creditors' conduct in filing the petition. *Id.*

Here, Basil Streets argues that APL, as the primary/lead petitioning creditor in this case, filed this case solely to collect on a debt, and that it orchestrated this involuntary case by impermissibly soliciting and manipulating the other three petitioning creditors into joining the Petition. Basil Street further asserts that the other three petitioning creditors' conduct in filing the Petition was both objectively unreasonable and subjectively improper. Regarding the objective component, Basil Street argues that Forge, THA, and YVA failed to conduct any pre-filing due diligence as to Basil Street's business affairs, relied solely on the assurances of APL's principal, Jack Antaramian, that they would be paid, and generally lacked knowledge about the material aspects of the bankruptcy case they had commenced. Subjectively, Basil Street contends that the Petitioning Creditors were motivated by an improper bankruptcy purpose, namely debt collection.

Notwithstanding the foregoing assertions, the Court finds that Basil Street has not established the absence of any genuine issues of fact relating to the intent of the Petitioning Creditors. As noted above, intent is a very difficult thing to prove, especially through the use of deposition testimony alone. Reliance by the other three Petitioning Creditors on the statements of Mr. Antaramian may amount to bad judgment, especially in light of the hefty penalties that can potentially be imposed if the Petition is ultimately dismissed. However, the Court is unwilling

to find that a lack of intricate bankruptcy knowledge and general business sophistication, coupled with an understandable desire to be reimbursed for long overdue debts, somehow equates to bad faith. This is especially so when the Court considers that the Petition was filed, on its face, in compliance with the requirements of § 303, and under the law, was presumed to have been filed in good faith.

■ With respect to Basil Street's charge that APL orchestrated this case, the Court notes that merely seeking out other creditors to join in a petition does not give rise to a finding of bad faith, unless such solicitation involved the use of fraudulent statements, harassive conduct, or the exertion of undue pressure. *U.S. Fidelity & Guar. Co. v. DJF Realty & Suppliers, Inc.*, 58 B.R. 1008, 1012 (N.D.N.Y.1986). Here, there is no evidence indicating that APL lied to the other Petitioning Creditors, or that they were otherwise pressured into joining the Petition. In fact, all four of the Petitioning Creditors were represented by counsel, as evidenced by their attorneys' signatures on the Petition.

The fact that the principals of the Petitioning Creditors may not have been able to testify at their depositions about the nuances of bankruptcy laws or procedures does not, by itself, rise to the level of bad faith. Nor does the lack of such specialized knowledge otherwise negate the fact that the Petitioning Creditors believed themselves to hold qualifying claims against Basil Street under § 303(b). That each petitioning creditor may not have known the status of each of the other petitioning creditors' claims, or whether Basil Street was generally paying its debts to the rest of its creditor body, does not necessarily mean that each Petitioning Creditor did not possess a good faith belief

that its own claim remained unpaid, and that an involuntary petition presented the best opportunity for receiving at least some payment. So long as the creditors were holders of claims that were not contingent as to liability or subject to bona fide dispute as to liability or amount, they have satisfied their burden imposed upon them by the Code.

■ Further, to the extent that various courts have found the invocation of bankruptcy jurisdiction for purposes of—and as a substitute for—customary debt collection to be an improper motivating purpose, and indicator of bad faith,[8] the Court notes that at some level, all creditors in any bankruptcy proceeding hope to be paid at least a portion of what they are owed. It is folly to believe that creditors, even those in voluntary cases, are unmotivated to participate in the bankruptcy by the prospect of repayment. Why should the rule be any different in an involuntary case? To hold, otherwise, would mean that, at the start of every involuntary case, any creditor who files or joins an involuntary petition could potentially be confronted with the charge that the creditor is motivated by an improper purpose—debt collection. The ensuing litigation would unnecessarily prolong the proceedings, clutter the issues, drive up attorneys' fees and other costs to both the alleged debtor and petitioning creditors, and consume judicial resources on questions unrelated to the requirements set forth under § 303. This undesirable result is one that Congress clearly must have foreseen and intended to avoid when enacting the provisions related to involuntary cases, as evidenced by the fact that the commencement requirements listed in § 303(b) do not include a bad faith element.

8. *See, e.g., In re SBA Factors of Miami, Inc.,* 13 B.R. 99, 100 (Bankr.S.D.Fla.1981).

Moreover, in those cases in which debt collection was deemed to have been an improper purpose or the motivating factor to file the involuntary petition—and where an ultimate finding of bad faith was made—courts seemed more concerned with the exclusively self-dealing motives of the creditor(s) involved, or the fact that a very small amount of debt (relative to the alleged debtor's overall assets) was being sought for collection. *See, e.g., In re Tichy Elec. Co. Inc.*, 332 B.R. 364 (Bankr. N.D.Iowa 2005) (three petitioning creditors' claims totaled mere $39,810.04, and creditors used bankruptcy to obtain a disproportionate advantage over all other creditors); *In re Grossinger*, 268 B.R. 386, 389 (Bankr.S.D.N.Y.2001) ("Bankruptcy Code was not intended to permit a single creditor who is owed a relatively small debt to put a debtor into involuntary bankruptcy, negotiate a settlement and walk away.").

 A more accurate characterization of this notion was stated by Judge Killian in *In re Key Auto Liquidation Center, Inc.*, 372 B.R. 74, 77 (Bankr.N.D.Fla.2007), in which the court noted that "bad faith does not exist when a petitioning creditor's primary motivation in filing the petition is to 'protect itself against other creditors' obtaining a disproportionate share of the alleged debtor's assets.'" (citing *General Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d at 1502). In contrast to the exclusive self-dealing cases, this case already involves four petitioning creditors and presents an opportunity—if an order for relief is ultimately entered—for an or-

derly liquidation of the Alleged Debtor's assets to be distributed to all creditors[9] according to the priority scheme of the Bankruptcy Code. Moreover, if this bankruptcy case proceeds, the creditors would have a single forum in which to seek an orderly liquidation and pursue the efficient resolution of any preference or fraudulent transfer actions that may exist,[10] which is certainly a proper motive to initiate an involuntary case. *See In re Tucker*, 2011 WL 5192801, *3 (Bankr.N.D.W.Va. Oct. 31, 2011) (noting that the alleged debtor "has failed to show how invoking the bankruptcy court's jurisdiction to recover and liquidate property for his bankruptcy estate is not something that a reasonable person in the position of the petitioning creditors would attempt" and stating that petitioning creditors can properly be motivated by a desire to recover fraudulent transfers and to initiate a liquidation of the alleged debtor's assets, both of which goals can be achieved through the bankruptcy process). In sum, the Court fails to comprehend how taking advantage of the opportunities afforded by the Bankruptcy Code can be deemed bad faith.

Finally, and perhaps most troublesome to Basil Street's position, is the fact, alluded to above, that Basil Street has not challenged or yet presented any evidence to suggest that the Petitioning Creditors have not complied with the actual requirements for commencing an involuntary petition under § 303. *See In re Ex–L Tube, Inc.*, 2007 WL 541670 at *3 (Bankr. W.D.Mo. Feb. 16, 2007) (noting that it

---

9. The Court notes that in addition to the Petitioning Creditors, there appears to be a number of other creditors, including taxing authorities, who could potentially benefit from this bankruptcy case if an order for relief is ultimately entered. *Contrast to Atlas Mach. & Iron Works, Inc. v. Bethlehem Steel Corp.*, 986 F.2d 709, 714 (4th Cir.1993) (involuntary petition commenced by single petitioning credi-

tor despite fact that alleged debtor had more than 12 creditors; bankruptcy court found that administration of case would not benefit any other creditors).

10. Counsel has advised the Court that there is a reasonable basis to believe that Basil Street has engaged in preferential and/or fraudulent transfers.

would be in direct contravention to the unambiguous language of the Bankruptcy Code to dismiss a petition where the filing requirements have been satisfied). If the law allowed a petition to be dismissed, or a finding of bad faith to be rendered, even where petitioning creditors held qualifying claims and had otherwise properly commenced an involuntary case, then no involuntary petition would ever be filed.

Thus, if Basil Streets wishes to challenge the claims of the Petitioning Creditors, it will have to do so at trial. For purposes of resolving the instant motion, however, the Court finds that there is an insufficient record either to dismiss the Petition or to make a finding that the Petitioning Creditors filed the Petition in bad faith.

### 3. Basil Street's Motion to Abstain

 For many of the reasons explained above, the Court finds that it should not abstain from hearing this case. Additionally, the Court notes that two of the Petitioning Creditors and the Alleged Debtor have been engaged in expensive, protracted litigation in state court. In that case, control over the Alleged Debtor appears to be one of the central contested issues. Rather than prolonging the state court dispute, an orderly liquidation conducted under the auspices of a bankruptcy trustee, with the corresponding reporting requirements and judicial oversight, may be warranted. See In re Key Auto, 372 B.R. at 80 ("abstention is not in the best interest of the Creditors, especially since litigating who controls the Alleged Debtor would probably be more expensive than an orderly Chapter 7 liquidation"). Allowing the involuntary case to proceed if an order for relief is ultimately found to be proper would certainly cause the hostilities in state court to cease, and would bear the promise of finality to the proceedings in a way that the current receivership in state court cannot achieve, given the receiver's

position of neutrality and sole responsibility of simply maintaining the status quo at an operational level. For these reasons, the Court will not exercise its discretion to abstain.

### Conclusion

Based on the Court's interpretation of § 303, Basil Street's bad faith argument must be rejected as premature. Even if the Court were to consider such an argument, the Court finds that Basil Street has not met its burden on the record before the Court. The Court also finds insufficient reason to abstain from hearing this case. Accordingly, the Court will deny the Motion to Dismiss, or Alternatively, to Abstain (Doc. 88). The Petition will remain pending, subject to a trial to be scheduled by separate order of the Court.

At the trial, the Court will consider whether there are at least three qualifying petitioning creditors who hold noncontingent claims that are not the subject of a bona fide dispute as to liability or amount, and which total more than the statutorily required amount. The Court will also consider at trial whether Basil Street has generally been paying its debts as they become due, except for any such debts that are found to be the subject of a bona fide dispute as to liability or amount. The Court will not consider any additional arguments related to the bad faith of the Petitioning Creditors unless and until the Petition is dismissed. Basil Street is hereby directed to file an Answer to the Petition within 14 days of the date of this Order per Rule 1011(b) of the Federal Rules of Bankruptcy Procedure.

**DONE AND ORDERED.**